## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF COLUMBIA

**FILED**

SEP - 2 2011

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

ERIK O. AUTOR,

325 7th Street, N.W., Suite 1100
Washington, DC 20004;

NATHANAEL E. HERMAN,

1601 N. Kent Street, Suite 1200
Arlington, VA 22209;

CASS M. JOHNSON,

910 17th Street, NW, Suite 1020
Washington, DC 20006;

STEPHEN E. LAMAR,

1601 N. Kent Street, Suite 1200
Arlington, VA 22209;

WILLIAM REINSCH,

1625 K Street, NW, Suite 200
Washington, DC 20006;

ANDREW ZAMOYSKI,

110 D St SE #501
Washington, DC 20003,

        Plaintiffs,

v.

REBECCA BLANK, in her official capacity as
Acting Secretary of Commerce,

1401 Constitution Ave., NW
Washington, DC 20230;

UNITED STATES DEPARTMENT OF
COMMERCE,

1401 Constitution Ave., NW
Washington, DC 20230;

RON KIRK, in his official capacity as United
States Trade Representative,

Civil Action No.

Case: 1:11-cv-01593
Assigned To : Jackson, Amy Berman
Assign. Date . 9/2/2011
Description: Civil Rights-Non-Employ.

600 17th Street NW
Washington, DC 20508;

and OFFICE OF THE UNITED STATES
TRADE REPRESENTATIVE,

600 17th Street NW
Washington, DC 20508,

        Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Erik Autor, Nathanael Herman, Cass Johnson, Stephen Lamar, William Reinsch, and Andrew Zamoyski ("Plaintiffs") for their Complaint against Defendants Rebecca Blank, United States Department of Commerce, Ron Kirk, and Office of the United States Trade Representative ("Defendants") state and allege as follows:

### NATURE OF THE ACTION

1.  This action challenges on federal constitutional grounds the Executive Branch policy excluding federally registered lobbyists from serving on the Industry Trade Advisory Committees ("ITACs") jointly managed by the United States Department of Commerce ("DOC") and the Office of the United States Trade Representative ("USTR").  ITACs were established to advise the USTR and DOC on trade policy pursuant to the Trade Act of 1974 (the "Trade Act"), 19 U.S.C. § 2155.  In September 2009, the President informed the various agencies and executive departments of the federal government that federally registered lobbyists should not be appointed to agency advisory boards and commissions.  The DOC and USTR subsequently implemented a policy barring federally registered lobbyists from ITAC membership.  Plaintiffs are federally registered lobbyists who have been denied ITAC membership pursuant to this policy.  Plaintiffs contend that excluding federally registered lobbyists from these committees violates the First Amendment to the U.S. Constitution and

denies Plaintiffs equal protection of the laws.  Accordingly, Plaintiffs seek a declaration that this policy is unconstitutional and an injunction directing the Secretary of Commerce and the USTR to consider their applications for ITAC membership.

2.   The Supreme Court has repeatedly made clear that lobbying is a quintessential example of the exercise of the right to petition that is protected expressly by the First Amendment.  "In a representative democracy . . . [the] government act[s] on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives." *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137 (1961).  As Chief Justice (then Judge) Burger put it, even though "the term 'lobbyist' has become encrusted with invidious connotations, every person . . . trying to persuade Congressional action is exercising the First Amendment right of petition." *Liberty Lobby, Inc. v. Pearson*, 390 F.2d 489, 491 (D.C. Cir. 1968).

3.   The protected nature of lobbying activity is not altered by the fact that the lobbyist engages in petitioning activity on behalf of others for a fee. The First Amendment protects individuals' and groups' "right not only to advocate their cause, but also to select what they believe to be the most effective means for so doing." *Meyer v. Grant*, 486 U.S. 414, 424 (1988). And, as the Supreme Court has recognized, "a speaker is no less a speaker because he or she is paid to speak." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 801 (1988).

4.   Some courts have applied a strict-scrutiny standard in assessing the constitutionality of laws that burden the right to petition, requiring the government to demonstrate that the challenged law is justified by a "compelling government interest" and that it uses the "least restrictive means" of furthering that interest.  *See, e.g., Am. Civ. Liberties Union v. N.J. Election Law Enforcement Comm'n*, 509 F. Supp. 1123, 1129 (D.N.J. 1981).  This is a more demanding

standard than intermediate scrutiny, which inquires whether the challenged law is "narrowly

tailored to serve a significant governmental interest, and . . . leave[s] open ample alternative

channels for communication of the information." *Ward v. Rock Against Racism,* 491 U.S. 781,

791 (1989); *see also Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 298 (1984). The

narrow tailoring element of the intermediate scrutiny test requires that the government's chosen

means not be "substantially broader than necessary to achieve the government's interest." *Ward*,

491 U.S. at 800.  The lowest level of scrutiny, which is not applied to laws that burden

constitutionally protected rights, requires only a rational relationship between the statute and the

underlying government interest.

5.  Whichever level of scrutiny is applied, the policy prohibiting registered lobbyists from

serving on ITACs violates the First Amendment, both because the burden on constitutionally

protected activity is not justified by a sufficiently weighty government interest and because the

"fit" between the challenged policy and the asserted interest does not satisfy the constitutional

standards.  In particular, the burden on constitutionally protected activity cannot be justified on

the ground that it promotes transparency: It actually diminishes disclosure by creating a strong

incentive for individuals engaged in lobbying activity to organize their activities in such a way

that they evade the requirements of the Lobbying Disclosure Act. The burden on the exercise of

First Amendment rights also cannot be justified as preventing the appearance of "undue

influence" because it in no way has that effect, actually worsening the problem of perceived

lobbying influence by encouraging individuals to conduct their lobbying activities outside of the

Lobbying Disclosure Act's registration and disclosure requirements.  And it cannot be justified

as furthering the purpose of the ITACs because it is squarely inconsistent with Congress's goal

in creating these committees.

6.  In addition, the policy violates the equal protection principle, because it burdens only *registered* lobbyists while imposing no restriction on individuals who engage in as much or more lobbying activity.  There is no sufficiently weighty government interest to justify the distinction drawn by the challenged policy.

## PARTIES

7.  Plaintiff Erik Autor formerly represented the National Rail Federation on ITAC-5, which advises DOC and USTR on distribution services.  Autor was a member of ITAC-5 for ten years, and vice chair for four years.  Autor was not reappointed to ITAC-5 because he is a federally registered lobbyist.

8.  Plaintiff Nathanael Herman formerly represented the Travel Goods Association on ITAC-13, which advises on textiles and clothing.  Herman was a member of ITAC-13, and its predecessor ITAC-8, which advised on footwear, leather, and leather goods, for eight years.  Herman was not reappointed to ITAC-13 because he is a federally registered lobbyist.

9.  Plaintiff Cass Johnson formerly represented the National Council of Textile Organizations on ITAC-13.  Johnson was a member of ITAC-13 for six years, and vice chair for approximately one year.  Johnson was not reappointed to ITAC-13 because he is a federally registered lobbyist.

10. Plaintiff Stephen Lamar formerly represented the American Apparel and Footwear Association on ITAC-13.  Lamar was a member and chair of ITAC-13 since its inception in 2004 until February 2010, and was previously a member of ITAC-13's predecessor, ITAC-15, for five years.  Lamar was not reappointed to ITAC-13 because he is a federally registered lobbyist.

11. Plaintiff William Reinsch is interested in applying to represent the National Foreign Trade Council ("NFTC") on an ITAC.  Given the published DOC and USTR  policies, however,

it is clear that Reinsch's application will not be accepted. The NFTC was previously represented by others within the organization, but who are no longer with the NFTC.

12. Plaintiff Andrew Zamoyski formerly represented the Society of Chemical Manufacturers and Affiliates ("SOCMA") on ITAC-3, which advises on chemicals, pharmaceuticals, and medical devices. Zamoyski was a member of ITAC-3 for approximately two years. Zamoyski was not reappointed to ITAC-3 because he is a federally registered lobbyist. Zamoyski's registration under the LDA, which caused him to be ineligible for reappointment to the ITAC, was in conjunction with his representation of a chemical company not affiliated with SOCMA.

13. Defendant U.S. Department of Commerce is an agency of the United States Government.

14. Defendant Rebecca Blank is the Acting Secretary of Commerce. Defendant Blank is being sued in her official capacity only.

15. Defendant Office of the U.S. Trade Representative is an agency of the United States Government.

16. Defendant Ron Kirk is the United States Trade Representative. Defendant Kirk is being sued in his official capacity only.

## JURISDICTION AND VENUE

17. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. The challenged policy and complaint establish an "actual controversy" within the meaning of 28 U.S.C. § 2201, entitling the Plaintiffs to a declaratory judgment and supplemental relief.

18. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

## FACTUAL ALLEGATIONS

The Lobbying Disclosure Act of 1995 ("LDA")

19. The LDA defines "lobbying activities" as "lobbying contacts and efforts in support of such contacts, including preparation and planning activities, research and other background work that is intended, at the time it is performed, for use in contacts, and coordination with the lobbying activities of others." 2 U.S.C. § 1602(7).

20. "[L]obbying contact means any oral or written communication . . . to a covered [government] official" on behalf of a client that seeks the formulation, modification, adoption, administration, or execution of any federal rule, regulation, program, position, or policy. 2 U.S.C. § 1602(8)(A). Covered government officials generally include cabinet members, their deputies and undersecretaries, members of independent executive boards and commissions, and others serving in designated "position[s] of a confidential, policy-determining, policy-making, or policy-advocating character." 2 U.S.C. § 1602(3)-(4).

21. Congress envisioned that lobbyists would serve on ITACs and other advisory committees, as evidenced by the fact that the LDA expressly excludes from the definition of "lobbying contact" a communication that is "made in the course of participation in an advisory committee subject to the Federal Advisory Committee Act." 2 U.S.C. § 1602(8)(B)(vi). ITACs are committees within the meaning of that Act.

22. The LDA imposes registration and disclosure requirements on individuals (1) who are paid for their lobbying services; (2) whose "lobbying activities" occupy more than 20 percent of their time for a particular client over a three-month period; and (3) who make more than one lobbying contact with respect to the particular client. 2 U.S.C. § 1602(a)(10).

23. Registration under the LDA, therefore, does not directly correlate with the amount of lobbying—whether measured in number of contacts or amount of time devoted to lobbying contacts and other lobbying activities—in which an individual engages.  Depending on the nature of the overall assignment for a particular client—in particular, whether the individual has duties other than lobbying activities—the individual may be required to register even if he or she makes only two lobbying contacts and devotes only a total of three hours to lobbying activities for the particular client during the relevant period.  Another individual may not be required to register even though he or she makes dozens of lobbying contacts and devotes scores of hours to lobbying activities for that client during the relevant period.

24. As enacted, the LDA also permits entities covered by Sections 6033(b)(8) and 162(e) of the Internal Revenue Code ("IRC") to use the IRC's narrower definition of covered "Federal executive branch officials" when calculating their lobbying contacts and activities.  2 U.S.C. § 1610(a), (b).  As Congress's official LDA guidelines explain, "[b]ecause there are fewer Executive Branch officials under the IRC definitions than under the LDA definitions, this may result in fewer individuals being listed as lobbyists and fewer lobbying contacts reflected on the [lobbying disclosure registration form]."  Office of the Clerk, U.S. House of Representatives, *Lobbying Disclosure Act Guidance* (revised June 15, 2011), *available at* http://lobbyingdisclosure.house.gov/amended_lda_guide.html.

25. Recognizing that the LDA's registration requirement can lead to unequal registration outcomes, the President has proposed eliminating the 20-percent rule and requiring the disclosure of all lobbying contacts: "Lobbyists should disclose everyone they lobby and when, where, and what the substance of the contact was. The current law also contains a loophole that allows many lobbyists to avoid registering so long as they keep their actual lobbying activities to

less than 20% of their time working for any particular client . . . . Th[is] loophole[] should be

closed." *See* White House Fact Sheet, Feb. 1, 2010, *available at*

http://www.whitehouse.gov/blog/2010/01/31/lobbyists-rush-hold-floodgates-open.

The Trade Act

26. The Trade Act directs the DOC and USTR to "seek information and advice from

representative elements of the private sector . . . with respect to" the negotiation, operation,

development, implementation, and administration of U.S. trade policy.  19 U.S.C. § 2155(a)(1).

27. ITACs are among the advisory committees created by the Trade Act to advise the DOC

and USTR on U.S. trade policy.  19 U.S.C. §  2155(c)(1)-(2).

28. The Trade Act established ITACs for the purpose of soliciting the "policy advice,

technical advice and information, and advice on other factors" from industries that have an

interest in U.S. trade policy.  19 U.S.C. § 2155(d).  The Trade Act requires that ITACs be

"representative of all industry . . . and other interests . . . including small business interests."  19

U.S.C. § 2155(c)(1); *see also id.* § 2155(c)(2).

29. In addition to requiring the USTR and DOC to seek policy advice from ITACs, the Trade

Act directs that "in the course of consultations with the Congress [regarding U.S. trade policy],

information on the advice and information provided by advisory committees shall be made

available to congressional advisers."  19 U.S.C. § 2155(i); *see also id.* § 2155(e)(1) ("[E]ach

appropriate [ITAC] . . . shall meet at the conclusion of negotiations for each trade agreement

entered into under section 3803 of this title, to provide to the President, to Congress, and to the

United States Trade Representative a report on such agreement.").

30. The Trade Act states that ITACs "shall be organized by the United States Trade

Representative and the Secretar[y] of Commerce . . . .  The members of such committees shall be

appointed by the United States Trade Representative in consultation with [the Secretary of

Commerce]." 19 U.S.C. § 2155(c)(1).

31. The DOC and USTR criteria for ITAC membership state that "[m]embers are selected to

represent their sponsoring U.S. entity's interests on trade matters. A secondary consideration is

members' knowledge and expertise of their industry and of trade matters relevant to the work of

the Committee." ITAC, *Become an Advsior – Selection Criteria*, *available at*

http://ita.doc.gov/itac/become_an_advisor/becomeanadvisor.asp#3.

Exclusion of Federally-Registered Lobbyists from ITACs

32. On September 23, 2009, Deputy Counsel to the President Norm Eisen announced on the

White House's Open Government Initiative website that "[t]he White House has informed

executive agencies and departments that it is our aspiration that federally-registered lobbyists not

be appointed to agency advisory boards and commissions." White House Open Government

Initiative Blog, *Lobbyists on Agency Boards and Commissions*, Sept. 23, 2009, *available at*

http://www.whitehouse.gov/blog/2009/09/23/lobbyists-agency-boards-and-commissions.

33. In a subsequent letter responding to critics of the proposal, Eisen stated that "[i]t's an

indisputable fact that in recent years, lobbyists for major special interests have wielded

extraordinary power in this town. The result has been a national agenda too often skewed in

favor of the interests that can afford their services." Letter from Norman L. Eisen, Special

Counsel to the President (Oct. 21, 2009), *available at*

http://www.whitehouse.gov/assets/documents/Signed_Lobbyist_Response_Letter_%2810-21-

09%29.pdf.

34. Pursuant to the White House announcement, the DOC and USTR now require persons

applying for ITAC membership to provide a statement affirming both that:  a) the applicant is not

a federally registered lobbyist, and b) if appointed, the applicant will not be able to continue

serving as an ITAC member if he or she should become a federally registered lobbyist. ITAC

membership remains open to lobbyists whose activities fall short of the LDA's 20-percent

registration threshold.

35. In a recent request for ITAC nominations, the DOC and USTR informed prospective

nominees that federally registered lobbyists are ineligible: "The applicant must not be a

federally-registered lobbyist." Request for Nominations, 75 Fed. Reg. 24584-01, 24585 (May 5,

2010).

Effects of Exclusion of Federally-Registered Lobbyists from ITACs

36. Excluding registered lobbyists from ITACs does not mean that no ITAC member will be

engaged in lobbying activity. To the contrary, individuals permitted to serve on ITACs are free

to—and may well—engage in more lobbying activity than the registered lobbyists excluded from

service on the ITACs. The only difference is that the registered lobbyists' activities are disclosed

in LDA filings, while the non-registered individuals' lobbying activities remain secret.

37. Individuals who register as lobbyists pose no risk of undue influence that is greater than

that posed by individuals who engage in lobbying activities but are not required to register. To

the contrary, registered lobbyists pose less of a risk in this regard because registered individuals'

lobbying activities must be disclosed publicly.

38. Because President Obama's campaign did not accept contributions from registered

lobbyists, did not permit registered lobbyists to "bundle" campaign contributions, and did not

permit registered lobbyists to participate in the campaign, individuals who are registered

lobbyists pose the *least* threat of appearing to exercise undue influence over the Executive

Branch. To the extent there is any risk of an appearance of undue influence, it would come from

involvement in the formation of Executive Branch policy by unregistered individuals who were

campaign contributors, bundlers, or campaign activists. The policy of excluding registered lobbyists from ITACs thus burdens the individuals least likely to present an appearance of undue influence, while permitting service on ITACs by the individuals most likely present such an appearance. The policy therefore cannot be justified as a measure to reduce the appearance of undue influence.

39. Excluding registered lobbyists from advisory committees creates an incentive for individuals to structure their work so as to avoid the LDA's 20-percent threshold, undermining the policy's stated goal of increasing transparency. Indeed, a joint study by OMB Watch and the Center for Responsibility and Ethics in Washington has found that 1,691 lobbyists deregistered between April and November 2009. *See* David Levinthal, *Lobbyists Terminating Their Federal Registrations at an Accelerated Rate*, Open Secrets.org, Nov. 2, 2009, *available at* http://www.opensecrets.org/news/2009/11/lobbyists-terminating-their-fe.html. These deregistrations likely do not reflect a reduction in lobbying activity, but rather a restructuring of lobbying activities to remain beneath the LDA's twenty percent registration threshold.

40. Furthermore, lax enforcement of the LDA, when combined with the penalties the policy of excluding registered lobbyists from ITACs has placed on being a federally registered lobbyist, encourages non-compliance with the registration and disclosure rules. Plaintiffs are unaware of *any* prosecutions for unlawful failures to comply with the LDA. As a result, the advisory-committee exclusion adversely affects individuals such as the Plaintiffs in this case who comply with their legal obligations and register as lobbyists, while failing to capture those who flout the LDA and thus pose the greater threat of corrupting the governmental process.

41. The exclusion of federally registered lobbyists from government advisory committees places a disproportionate burden on small-business interests and public-interest organizations

because these groups cannot afford to replace disqualified lobbyists with additional staff to serve on committees. As one observer has noted, "[s]ome business associations will either have to stop lobbying or give up their spots on advisory boards, which are scattered throughout the federal government." Kevin Bogardus, *White House Lobbying Rules Could Hurt Smaller Trade Group, Leaders Say*, The Hill, Oct. 1, 2009, *available at* http://thehill.com/business-a-lobbying/61249-lobbying-guidance-could-hurt-smaller-trade-groups.

## FIRST CAUSE OF ACTION
### (Violation of the First Amendment)

42. Paragraphs 1 through 41 are fully incorporated herein.

43. The First Amendment right to petition the government for a redress of grievances protects the right to lobby.

44. The exclusion of federally registered lobbyists from ITACs substantially burdens First Amendment rights by denying the benefit of committee service to individuals whose exercise of the right to petition triggers the LDA's registration requirement, while also interfering with the ability of the entities that seek the services of these lobbyists to communicate their views to the government.

45. This exclusion cannot be justified by the Government's stated goal of limiting the influence of "major special interests," because the Trade Act established ITACs so that the DOC and USTR could better promote U.S. industries by seeking the advice of businesses that have an economic interest in U.S. trade policy. Plaintiffs' lobbying activities on behalf of these industries are consistent with—and, indeed, supportive of—the statutory purpose of ITACs. This is especially true in light of the fact that Congress expressly excluded participation in an advisory committee from the definition of "lobbying contact." 2 U.S.C. § 1602(8)(B)(vi).

46. Moreover, given the exclusion of registered lobbyists from the President's campaign, any threat of a perception of undue influence over the Executive Branch would come from lobbying activities by unregistered individuals who were active in that campaign. But the challenged policy does not address those individuals. Thus, the DOC and USTR lack a legitimate basis to deny ITAC membership to Plaintiffs for exercising their First Amendment rights.

47. Furthermore, this exclusion is under-inclusive because it does not apply to those whose lobbying activities do not cross the LDA's twenty percent threshold. The LDA's registration requirement is not a legitimate basis on which to determine ITAC membership. Unregistered lobbyists pose a greater threat of undue influence and corruption because they are not subject to the LDA's disclosure requirements. The accelerated rate at which lobbyists are deregistering exacerbates this problem by driving more lobbying activities beyond the reach of public scrutiny.

48. Even if the Government had a legitimate purpose in enforcing the lobbyist exclusion, this exclusion is overbroad because it applies equally to small business organizations and public-interest groups that do not pose a risk of "undue influence." Furthermore, these smaller, less well-funded organizations cannot afford to hire additional staff to serve on ITACs, effectively denying them committee representation in contravention of the Trade Act's requirement that ITACs be "representative of all industry . . . and other interests . . . including small business interests." 19 U.S.C. § 2155(c)(1); *see also id.* § 2155(c)(2).

49. This exclusion attaches an unconstitutional condition on the exercise of the First Amendment right to petition. The Government may not deny a benefit to a person on a basis that infringes his or her constitutionally protected rights. Plaintiffs represent the business interests that Defendants are statutorily required to consult when formulating U.S. trade policy. Thus, the

Government has no legitimate basis on which to condition ITAC membership on Plaintiffs' agreement to forgo lobbying efforts on behalf of these groups.

## SECOND CAUSE OF ACTION

### (Violation of Equal Protection)

50. Paragraphs 1 through 49 are fully incorporated herein.

51. The Fifth Amendment's Due Process Clause prevents the Federal Government from discriminating against individuals engaged in constitutionally protected activity unless justified by a sufficiently important government interest.

52. The DOC and USTR policy of excluding federally registered lobbyists from ITAC membership penalizes Plaintiffs for engaging in an activity—petitioning the government—that is expressly protected by the First Amendment.  The classification on which this exclusion is based is not closely related to the government's interest in promoting transparency or preventing the appearance of undue influence and therefore violates the Constitution.

53. The restriction draws an unconstitutional distinction between those who exercise their right to petition the government and those who do not.  As the Supreme Court stated in *Police Dep't of Chicago v. Mosley*, "[t]he Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives."  408 U.S. 92, 101 (1972).

54. The policy penalizes some individuals who engage in lobbying, but imposes no sanction at all on other individuals whose lobbying activities are much more extensive than those subject to the policy, including those who structure their time so as not to cross the LDA's 20-percent threshold and those who elect under Section 15 of the LDA, 2 U.S.C. § 1610, to use the IRC's narrower definition of covered "Federal executive branch officials" to avoid registration.

55. Registered lobbyists, who must disclose their activities to the public under the LDA, pose less of a threat to the integrity of agency advisory committees than do unregistered lobbyists whose lobbying activities remain secret.

56. Furthermore, the DOC and USTR have no legitimate interest in discriminating against Plaintiffs who lobby on behalf of the very business interests that Congress intended to be represented on the ITACs.

57. For all of these reasons, the DOC and USTR have unconstitutionally deprived Plaintiffs of equal protection of the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

(1) Declare that the DOC and USTR exclusion of all federally registered lobbyists from ITACs is unconstitutional;

(2) Enjoin the DOC and USTR from denying Plaintiffs' applications for ITAC membership on the basis of their status as federally registered lobbyists;

(3) Award Plaintiffs their costs and reasonable attorneys' fees in this action; and

(4) Grant such other relief as the Court deems just and proper.

Dated: September 2, 2011

By: _____
Charles A. Rothfeld (D.C. Bar #367705)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

Attorney for Plaintiffs, Erik Autor, Nathanael Herman, Cass Johnson, Stephen Lamar, William Reinsch, and Andrew Zamoyski