**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Erik O. Autor, *et al.*, | |
| Plaintiffs, | Civil Action No. 1:11-cv-01593-ABJ |
| v. | |
| Penny Sue Pritzker, *et al.*, | Hon. Amy Berman Jackson |
| Defendants. | |

**<u>PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

BACKGROUND ..................................................................................................................... 1

ARGUMENT .......................................................................................................................... 4

I.      Plaintiffs Are Prevailing Parties.................................................................................. 5

        A.      Plaintiffs Are Prevailing Parties as a Result of their Jurisdictional
                Victories. ...................................................................................................... 5

        B.      Plaintiffs Are Prevailing Parties as a Result of the D.C. Circuit's Remand. ......... 7

        C.      Plaintiffs Are Not Seeking to Invoke the "Catalyst" Theory................................ 8

II.     The Government's Position Was Not Substantially Justified......................................... 10

CONCLUSION...................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abraham v. District of Columbia,*
    338 F. Supp. 2d 113 (D.D.C. 2004) ......................................................................................10

*Autor v. Blank,*
    892 F. Supp. 2d 264 (D.D.C. 2012) ("*Autor I*") .......................................................................2

\* *Autor v. Pritzker,*
    740 F.3d 176 (D.C. Cir. 2014) ("*Autor II*") .................................................................. *passim*

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,*
    532 U.S. 598 (2001) .............................................................................................8, 9, 10

\* *Carbonell v. INS,*
    429 F.3d 894 (9th Cir. 2005) ...........................................................................................5, 9

*Citizens for a Better Env't v. Steel Co.,*
    230 F.3d 923 (7th Cir. 2000) ...........................................................................................6, 9

*District of Columbia v. Jeppsen,*
    514 F.3d 1287 (D.C. Cir. 2008) ...........................................................................................5

*District of Columbia v. Straus,*
    590 F.3d 898 (D.C. Cir. 2010) ........................................................................................5, 9

*Doe v. Rumsfeld,*
    501 F. Supp. 2d 186 (D.D.C. 2007) ...................................................................................10

*Elks Nat'l Found. v. Weber,*
    942 F.2d 1480 (9th Cir. 1991) ............................................................................................6

*Halverson v. Slater,*
    206 F.3d 1205 (D.C. Cir. 2000) .........................................................................................10

*Hewitt v. Helms,*
    482 U.S. 755 (1987) ............................................................................................................8

\* *Johnson v. District of Columbia,*
    190 F. Supp. 2d 34 (D.D.C. 2002) .................................................................................9, 10

*Kean for Congress Comm. v. FEC,*
    2006 WL 89830 (D.D.C. 2006) ...........................................................................................7

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Lake Pilots Ass'n v. U.S. Coast Guard*,
 310 F. Supp. 2d 333 (D.D.C. 2004) ........................................................................8

*LePage's 2000, Inc. v. Postal Regulatory Comm'n*,
 674 F.3d 862 (D.C. Cir. 2012) .............................................................................10

*Liberty Lobby, Inc. v. Pearson*,
 390 F.2d 489 (1968) .............................................................................................11

\* *New Life Evangelistic Ctr., Inc. v. Sebelius*,
 847 F. Supp. 2d 50 (D.D.C. 2012) .........................................................................7

*Perry v. Sindermann*,
 408 U.S. 593 (1972) .............................................................................................11

*Pickering v. Board of Education*,
 391 U.S. 563 (1968) .............................................................................................11

*Pierce v. Underwood*,
 487 U.S. 552 (1988) .............................................................................................10

\* *Select Milk Producers, Inc. v. Johanns*,
 400 F.3d 939 (D.C. Cir. 2005) ...........................................................................5, 7

*Thomas v. Nat'l Sci. Found.*,
 330 F.3d 486 (D.C. Cir. 2003) ...............................................................................8

*Turner v. Nat'l Transp. Safety Bd.*,
 608 F.3d 12 (D.C. Cir. 2010) ..................................................................................5

*United States ex rel. Grynberg v. Praxair, Inc.*,
 389 F.3d 1038 (10th Cir. 2004) ..............................................................................6

*Waterman S.S. Corp. v. Maritime Subsidy Bd.*,
 901 F.2d 1119 (D.C. Cir. 1990) ..............................................................................7

**STATUTES, RULES AND REGULATIONS**

28 U.S.C. § 2412 ...........................................................................................1, 5, 8, 10

Fed. R. Civ. P. 54 .................................................................................................1, 11

75 Fed. Reg. 24,584 (Aug. 29, 2014) ..........................................................................4

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

75 Fed. Reg. 35,955 (June 18, 2010) .............................................................................................4

79 Fed. Reg. 47,482 (Aug. 13, 2014).............................................................................................4

Plaintiffs, through undersigned counsel, hereby respectfully move this Court to award them their reasonable fees and costs in this matter.[1] Plaintiffs filed this action in 2011 to challenge the government's policy (the "Lobbyist Ban") of excluding federally registered lobbyists from Industry Trade Advisory Committees ("ITACs"). Nearly three years later and after a decision of the D.C. Circuit that described the significant respects in which the policy undermined Plaintiffs' exercise of their constitutional rights, Plaintiffs received their requested relief when they dismissed the action on the condition that the Office of Management and Budget modify and in relevant part repeal the Lobbyist Ban. Having prevailed, and for the reasons described below, Plaintiffs are entitled to their fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and Fed. R. Civ. P. 54.

## BACKGROUND

As explained in the Complaint, the government in 2009 and 2010 implemented a policy designed to adversely affect a category of persons who exercise their constitutionally protected right to petition, federally registered lobbyists. Among other things, the Executive Branch adopted a general policy that registered lobbyists should not be eligible for appointment to agency advisory boards and commissions. This Lobbyist Ban was implemented despite the long line of Supreme Court and appellate decisions protecting lobbyists' First Amendment right to petition the government.

Plaintiffs, federally registered lobbyists who were denied positions on ITACs as a result of this policy, brought this suit in 2011 to challenge the constitutionality of the Lobbyist Ban. As the Complaint explained, "[t]he exclusion of federally registered lobbyists from ITACs

---

[1] Pursuant to the Court's Minute Order of October 8, 2014, and the parties' agreement (Dkt. 30), this motion addresses only Plaintiffs' entitlement to attorneys' fees and costs. If the Court grants this motion, Plaintiffs will submit briefing regarding the amount of their fees and costs and the reasonableness of that amount. As the parties' joint motion notes, Defendants state that they will oppose this motion.

substantially burdens First Amendment rights by denying the benefit of committee service to individuals whose exercise of the right to petition triggers the [Lobbying Disclosure Act's] registration requirement." Compl. ¶ 44. The Complaint went on to explain that the government's proffered justification for the Lobbyist Ban—reducing the influence of "major special interests"—was insufficient to support this burden on First Amendment rights. *Id.* ¶¶ 45–48.

The government moved to dismiss, raising a number of now-rejected claims. First, the government asserted that this Court lacked jurisdiction to adjudicate Plaintiffs' claims because "Plaintiffs have failed to establish that they have been deprived of a 'legally protected interest.'" Mot. to Dismiss (Dkt. 8), at 16. According to the government, because "[i]ndividuals on ITACs necessarily serve in a representative capacity representing the views and interests of domestic producers and their subsectors in the respective industry sector," *id.* at 17 (emphasis and internal quotation marks omitted), Plaintiffs lacked standing to bring their claims. But this Court correctly rejected the government's view of the law, holding that Plaintiffs had standing to raise both their First Amendment and Equal Protection claims. *See Autor v. Blank*, 892 F. Supp. 2d 264, 272 (D.D.C. 2012) ("*Autor I*"), *rev'd on other grounds sub nom.*, *Autor v. Pritzker*, 740 F.3d 176 (D.C. Cir. 2014) ("*Autor II*").

On appeal, the government similarly asserted that Plaintiffs' claims were generally unreviewable because the authority to choose government advisors is entrusted to presidential discretion. *See Autor II*, 740 F.3d at 179 (noting that the government "asserted that the Constitution imposes very, very few restrictions on the President's power to choose his advisors" (internal quotation marks and alterations omitted)). Just as this Court rejected the government's initial argument based on standing, the D.C. Circuit upheld Plaintiffs' right to obtain judicial review of the Lobbyist Ban. *See id.* at 181–82. Specifically, the D.C. Circuit held that Plaintiffs

MOTION FOR ATTORNEYS' FEES AND COSTS

may vindicate their claims under the "unconstitutional conditions" doctrine. *See id.* at 181 ("Although the government generally has authority to choose whom it hires, the Supreme Court has repeatedly subjected employment conditions restricting fundamental rights to constitutional scrutiny, at least when the government fills non-partisan, non-policymaking positions.").

Finally, in both this Court and on appeal, the government persisted in its claim that the Lobbyist Ban "is not a penalty or an unconstitutional condition." Mot. to Dismiss (Dkt. 8), at 31. Although this Court granted the government's motion to dismiss on this ground, the D.C. Circuit reversed. In doing so, the court of appeals held that service on an ITAC qualifies as a government benefit that triggers entitlement to constitutional protection, that Plaintiffs' lobbying activity is protected by the First Amendment, that the Lobbyist Ban is not saved by the "subsidy doctrine" advanced by the government, and that the availability of alternative settings in which Plaintiffs may express their views does not undercut their constitutional claim. *Autor II*, 740 F.3d at 181, 182, 183. The D.C. Circuit went on to observe:

> The government justifies the ban on the grounds that it "directly relates to the purposes and efficacy of the ITACs as advisers" by "enabl[ing] the government to listen to individuals who have experience in the industry but who are not registered lobbyists, and are thus not otherwise as actively engaged in the political and administrative process." This rationale, Appellants respond, is "barely intelligible" because ITAC members "serve in a *representative* capacity."

*Id.* at 184 (internal record citation omitted). The court of appeals pointedly did not disagree with this characterization of the government's argument.

Although the D.C. Circuit then remanded the case to this Court for further proceedings, the court of appeals proffered several pointed questions that highlighted the infirmities in the government's defense of the Lobbyist Ban:

> the district court should ask the parties to focus on the justification for distinguishing, as the lobbyist ban does, between corporate

MOTION FOR ATTORNEYS' FEES AND COSTS

> employees (who may represent their employers on ITACs) and the registered lobbyists those same corporations retain (who may not). The court may also want to ask the government to explain how banning lobbyists from committees composed of representatives of the likes of Boeing and General Electric protects the "voices of ordinary Americans."

*Autor II*, 740 F.3d at 184 (quoting Presidential Memorandum, Lobbyists on Agency Boards and Commissions, 75 Fed. Reg. 35,955 (June 18, 2010)).

Unable to defend the policy in light of the decisions of this Court and of the D.C. Circuit, the government rescinded the Lobbyist Ban in relevant part. On August 13, 2014, the Office of Management and Budget issued revised guidance stating that "[t]he lobbyist ban does not apply to lobbyists who are appointed in a 'representative capacity,' meaning that they are appointed for the express purpose of providing a committee with the views of a nongovernmental entity, a recognizable group of persons or nongovernmental entities … or state or local government." Office of Management and Budget, "Revised Guidance on Appointment of Lobbyists to Federal Advisory Committees, Boards, and Commissions," 79 Fed. Reg. 47,482 (Aug. 13, 2014). Shortly thereafter, the Defendants applied the revised OMB guidance and issued a new request for nominations for ITAC members that no longer prohibited registered lobbyists from applying. *See* Department of Commerce, "Request for Nominations for the Industry Trade Advisory Committees (ITACs)" 75 Fed. Reg. 24,584 (Aug. 29, 2014). "In light of the modifications made to the challenged policy following initiation of this litigation," Plaintiffs agreed to dismiss their claims. Stipulation of Dismissal (Dkt. 28).

Having succeeded in obtaining relief from the government's unconstitutional policy, Plaintiffs now request that this Court award them their reasonable attorneys' fees and costs.

## ARGUMENT

The Equal Access to Justice Act provides that

MOTION FOR ATTORNEYS' FEES AND COSTS

a court shall award to a prevailing party other than the United States fees and other expenses, … incurred by that party in any civil action … brought by or against the United States … unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Plaintiffs meet both requirements of the statute. First, they are "prevailing part[ies]" as a result of the decisions in this Court and the D.C. Circuit. Second, the United States' attempt to punish Plaintiffs for the exercise of their constitutional right to petition was not substantially justified.

I.      **PLAINTIFFS ARE PREVAILING PARTIES.**

The D.C. Circuit has set forth "a three-part test for determining prevailing-party status: (1) there must be a court-ordered change in the legal relationship of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." *District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010) (internal quotation marks omitted). Importantly, "under the test laid out in *Straus* a party need receive only *some* form of judicial relief, not necessarily a court-ordered consent decree or a judgment on the merits." *Turner v. Nat'l Transp. Safety Bd.*, 608 F.3d 12, 15 (D.C. Cir. 2010) (emphasis added). Thus, for example, parties have "prevailed" where they have received a favorable jurisdictional ruling, *see, e.g.*, *District of Columbia v. Jeppsen*, 514 F.3d 1287, 1290 (D.C. Cir. 2008) (collecting cases but noting split of authority), obtained a preliminary injunction, *see, e.g.*, *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 948 (D.C. Cir. 2005), or obtained a favorable settlement, *see, e.g.*, *Carbonell v. INS*, 429 F.3d 894, 899 (9th Cir. 2005).

A.      **Plaintiffs Are Prevailing Parties as a Result of their Jurisdictional Victories.**

Here, Plaintiffs have received a number of favorable judicial determinations of their rights, thereby altering their legal relationship with the government. First, this Court ruled in

favor of Plaintiffs on the jurisdictional question of standing. Prior to this Court's decision, the government took the position that Plaintiffs, despite being excluded from ITACs as a result of their petitioning activities, had not suffered any cognizable injury. As a result of this Court's decision, Plaintiffs are now assured that their injuries are sufficient to support the assertion of their claims in federal court. By holding that Plaintiffs may sue the federal government, the Court has changed the legal relationship between the parties in Plaintiffs' favor. In this respect, Plaintiffs should be considered a prevailing party. *See United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1055–58 (10th Cir. 2004) (concluding that jurisdictional victory was sufficient for prevailing party status); *Citizens for a Better Env't v. Steel Co.*, 230 F.3d 923, 927–28 (7th Cir. 2000) (same); *Elks Nat'l Found. v. Weber*, 942 F.2d 1480, 1485 (9th Cir. 1991) (same).

Moreover, the D.C. Circuit expanded on that victory, and further changed "the legal relationship of the parties," when it held that Plaintiffs' claims are cognizable under the "unconstitutional conditions" doctrine. Thus, contrary to the government's initial position, it is now settled that the Lobbyist Ban is not insulated from review—as the government had asserted—on the ground that the Executive Branch has complete discretion in selecting its advisors or because Plaintiffs have alternative means by which to express their views. *See Autor II*, 740 F.3d at 181. The government's claim, at its core, was that Plaintiffs' claims were exempt from judicial review. After *Autor II*, Plaintiffs are now assured that any further attempts by the government to punish their petitioning activity by excluding them from ITACs or other advisory committees will be subject to judicial scrutiny.

These jurisdictional rulings provide ample grounds for concluding that Plaintiffs are prevailing parties. In this setting, it would be immaterial even were this Court to conclude

MOTION FOR ATTORNEYS' FEES AND COSTS

(counter-factually) that the government's ultimate decision to rescind the Lobbyist Ban was entirely voluntary and mooted the case; "[i]t does not matter that this case became moot after the court-ordered change in the parties' relationship." *Select Milk Producers*, 400 F.3d at 948 (emphasis omitted). It would remain the case that Plaintiffs' jurisdictional victories provided "relief that is 'concrete,' 'irreversible,' and incapable of being diminished through later proceedings." *Kean for Congress Comm. v. FEC*, 2006 WL 89830, at *4 (D.D.C. 2006) (awarding fees to plaintiff who obtained remand of action to agency). Having established that their legal rights vis-a-vis the government are different from and greater than the government had claimed, Plaintiffs are prevailing parties on these issues. Their subsequent success in also achieving the ultimate relief they sought only confirms that fact.

### B.     Plaintiffs Are Prevailing Parties as a Result of the D.C. Circuit's Remand.

The D.C. Circuit's discussion of the merits of Plaintiffs' claims also provides an additional change in the legal relationship between the parties that accords Plaintiffs "prevailing party" status. In *Autor II*, the D.C. Circuit did more than determine that Plaintiffs have stated non-frivolous claims. The court of appeals went on to provide the framework for analyzing those claims, noting—and not disagreeing with—Plaintiffs' description of the government's attempt to satisfy that framework as "barely intelligible." *Autor II*, 740 F.3d at 184. The court of appeals then highlighted the infirmity in the government's proffered justifications through pointed remand instructions for this Court. After *Autor II*, the writing was on the wall with respect to the Lobbyist Ban. Unsurprisingly, the government promptly rescinded the Lobbyist Ban in relevant part, providing Plaintiffs with the complete relief they demanded in this litigation.

Although the D.C. Circuit remanded the case rather than explicitly grant Plaintiffs relief on the merits, "a remand order may be sufficient [to confer prevailing-party status] where the terms of the remand are such that 'a substantive victory will obviously follow.'" *New Life*

*Evangelistic Ctr., Inc. v. Sebelius*, 847 F. Supp. 2d 50, 54 (D.D.C. 2012) (quoting *Waterman S.S. Corp. v. Maritime Subsidy Bd.*, 901 F.2d 1119, 1123 (D.C. Cir. 1990)). That is precisely the case here, given the nature of the remand instructions— highly critical of the government's policy— that accompanied the D.C. Circuit's decision. In other words, Plaintiffs obtained more than "a favorable judicial statement of law in the course of litigation that results in judgment against the plaintiff." *Hewitt v. Helms*, 482 U.S. 755, 763 (1987). Rather, as a result of the D.C. Circuit's remand instructions, Plaintiffs obtained "a change in defendants' primary conduct in the real world." *Lake Pilots Ass'n v. U.S. Coast Guard*, 310 F. Supp. 2d 333, 337 (D.D.C. 2004).

### C.    Plaintiffs Are Not Seeking to Invoke the "Catalyst" Theory.

In this context, Plaintiffs' status as a prevailing party is not due to their merely being the "catalyst" for the government's rescission of the Lobbyist Ban. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001); *see also Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492–94 (D.C. Cir. 2003) (denying attorneys' fees under the "catalyst" theory). In *Buckhannon*, the plaintiffs brought suit challenging orders to close their assisted living facilities. The defendants then immediately agreed to stay the orders and the state legislature shortly thereafter changed the applicable law. That history led the Supreme Court to hold that court action had not changed the *Buckhannon* plaintiffs' legal relationship with the state and, accordingly, that they were not prevailing parties. *See Buckhannon*, 532 U.S. at 604–05. Here, in contrast the government's revocation of the Lobbyist Ban was the result not just of Plaintiffs' decision to file suit, but of Plaintiffs' litigation victories on the issues of standing and Executive Branch discretion, and the D.C. Circuit's pointed remand instructions. These circumstances are materially different from those in *Buckhannon*.

Indeed, were *Buckhannon* read too broadly, it would both distort the text of § 2412 and lead to perverse results. Most obviously, "limiting 'prevailing' to 'prevailing on the merits' has

MOTION FOR ATTORNEYS' FEES AND COSTS

nothing to recommend it under either the text of the statute or the considerations that lie behind fee-shifting statutes." *Citizens for a Better Env't*, 230 F.3d at 930. Thus, Plaintiffs' victories on the issues of standing and reviewability can satisfy the *Straus* requirements. Similarly, "a litigant can be a prevailing party even if he has not obtained affirmative relief in his underlying action." *Carbonell*, 429 F.3d at 900. Thus, Plaintiffs are prevailing parties despite the lack of a final judgment on the merits of their claims.

A contrary rule would create absurd and counterproductive incentives. After *Autor II*, there could be little doubt that the Lobbyist Ban was unconstitutional and that continued litigation would produce a judgment to that effect. After all, there is no "justification for distinguishing, as the lobbyist ban does, between corporate employees (who may represent their employers on ITACs) and the registered lobbyists those same corporations retain (who may not)." *Autor II*, 740 F.3d at 184. Nor is there any reason that "banning lobbyists from committees composed of representatives of the likes of Boeing and General Electric protects the 'voices of ordinary Americans.'" *Id.* The government surely came to that conclusion itself; we have yet to hear any answer from the government to the D.C. Circuit's questions regarding possible justifications for the ban. In such a setting, and given the government's willingness to rescind the Lobbyist Ban in response to the D.C. Circuit's decision and Plaintiffs' agreement to dismiss the action, it would have made no sense to require the Plaintiffs to litigate the matter to judgment simply so that they would qualify for prevailing-party status. But that would be the incentive created by a rule that denies entitlement to fees here.

For these sorts of reasons, courts have "decline[d] to extend the holding in *Buckhannon*" too far. *Johnson v. District of Columbia*, 190 F. Supp. 2d 34, 45 (D.D.C. 2002). In *Johnson*, for example, the Court noted that making fees unavailable when a plaintiff administratively settles a

MOTION FOR ATTORNEYS' FEES AND COSTS

complaint under the Individuals with Disabilities Education Act would "place parents in the conflicted position of choosing between legal representation and their child's interests in an expeditious settlement." *Id.*[2] In the same way, denying Plaintiffs here "prevailing party" status would reduce the incentives for "expeditious settlement" and instead encourage plaintiffs to pursue additional litigation (and incur additional fees) merely to qualify for fees. To avoid this result, the Court should "refuse[] to extend *Buckhannon* beyond its holding." *Id.* at 46; *see also Doe v. Rumsfeld*, 501 F. Supp. 2d 186, 191 (D.D.C. 2007) (awarding fees for work on mooted appeal).

## II.   THE GOVERNMENT'S POSITION WAS NOT SUBSTANTIALLY JUSTIFIED.

Under 28 U.S.C. § 2412(b), the Court "may" award fees to a prevailing party such as Plaintiffs. However, the Court "shall" award fees to Plaintiffs unless it "finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "[T]he most naturally conveyed connotation of the phrase 'substantially justified' is 'justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.'" *LePage's 2000, Inc. v. Postal Regulatory Comm'n*, 674 F.3d 862, 866 (D.C. Cir. 2012) (per curiam) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "'[T]he Government has the burden of proving that its position ... was "substantially justified" within the meaning of the Act.'" *Id.* (quoting *Halverson v. Slater*, 206 F.3d 1205, 1208 (D.C. Cir. 2000)). The government cannot meet that burden here.

The D.C. Circuit's decision in this case makes clear that the government's position was not substantially justified. As discussed above, the Court of Appeals remanded this case with instructions that were critical of the government's litigating position, that did not deny that the

---

[2] We note that this issue has created a division of authority within this District. *See, e.g.*, *Abraham v. District of Columbia*, 338 F. Supp. 2d 113, 119–20 (D.D.C. 2004) (collecting cases).

MOTION FOR ATTORNEYS' FEES AND COSTS

government's position was "barely intelligible," and that directed this Court to inquire about the readily apparent contradictions in the government's position. *Autor II*, 740 F.3d at 184. As noted, we have yet to hear, and find it hard to imagine, how the government could plausibly answer the D.C. Circuit's questions.

Nor were the issues presented here particularly novel. The D.C. Circuit has long held that lobbying is a protected activity. *See Liberty Lobby, Inc. v. Pearson*, 390 F.2d 489, 491 (D.C. Cir. 1968) (Although "the term 'lobbyist' has become encrusted with invidious connotations, every person … trying to persuade Congressional action is exercising the First Amendment right of petition."). Similarly, the rule is well established that the government may not condition the receipt of government benefits on the willingness to surrender constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593 (1972). And, as Plaintiffs explained and the D.C. Circuit confirmed, even if Plaintiffs were analogized to government employees, the Supreme Court's framework in *Pickering v. Board of Education*, 391 U.S. 563, 574–75 (1968), would still apply.

Having said that, we of course recognize that this Court initially dismissed Plaintiffs' Complaint. But as the D.C. Circuit noted, the government did not defend central elements of this Court's analysis, which would make it difficult for the government now to rest on this Court's decision as support for an argument that its position was substantially justified. For that reason, and in light of the clear flaws that the D.C. Circuit identified in the government's argument, this Court should hold that the government's position in this case was not substantially justified.

## CONCLUSION

For the foregoing reasons, the Court should hold that Plaintiffs are entitled to an award of their reasonable fees and costs in this litigation under the Equal Access to Justice Act and Fed. R. Civ. P. 54.

Dated: October 17, 2014

By: s/Charles A. Rothfeld
    Charles A. Rothfeld (D.C. Bar #367705)
    crothfeld@mayerbrown.com
    Joseph P. Minta (D.C. Bar #1004966)
    Mayer Brown LLP
    1999 K Street, N.W.
    Washington, DC 20006-1101
    Telephone: (202) 263-3000
    Facsimile:(202) 263-3300

Attorneys for Plaintiffs, Erik O. Autor,
    Nathanael E. Herman, Cass M. Johnson,
    Stephen E. Lamar, William Reinsch, and
    Andrew Zamoyski

    MOTION FOR ATTORNEYS' FEES AND COSTS

**CERTIFICATE OF SERVICE**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on October 17, 2014.

<u>s/Charles A. Rothfeld</u>
Charles A. Rothfeld

Attorney for Plaintiffs, Erik O. Autor,
Nathanael E. Herman, Cass M. Johnson,
Stephen E. Lamar, William Reinsch, and
Andrew Zamoyski

MOTION FOR ATTORNEYS' FEES AND COSTS