**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
)
ERIK O. AUTOR, *et al.*,                          )
                                                                )
                Plaintiffs,             )
                                                                )
v.                                                             )
                                                                )     Civil Action No. 1:11-cv-01593 (ABJ)
PENNY SUE PRITZKER, *et al.*,                )
                                                                )
               Defendants.          )
_____)


**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
<u>APPLICATION FOR ATTORNEY'S FEES</u>**

# TABLE OF CONTENTS

BACKGROUND ........................................................................................................................2

I.    The Lawsuit .................................................................................................................2

II.   This Court's Dismissal of the Complaint..................................................................3

III.  The Court of Appeals' Decision ................................................................................4

IV.  Events Following the Court of Appeals' Remand to the District Court ..................6

ARGUMENT ...........................................................................................................................7

I.    Plaintiffs are not "Prevailing Parties" .....................................................................7

    A.   The Supreme Court's Decision in *Buckhannon* .............................................7

    B.   The D.C. Circuit's Application of *Buckhannon* ............................................9

    C.   Plaintiffs Cannot Meet the Standard for "Prevailing Party" Status ...........11

        1.   *Buckhannon* controls because Plaintiffs obtained their desired result
           only through Defendants' voluntary change in policy.......................................11

        2.   The interlocutory rulings in this case did not provide any
           judicial relief .....................................................................................................13

    D.   The Authorities Plaintiffs Rely Upon Confirm that Plaintiffs
        Are Not "Prevailing Parties".......................................................................18

II.   The Government's Position was Substantially Justified.........................................24

CONCLUSION........................................................................................................................29

# TABLE OF AUTHORITIES

**CASES**

*American Wrecking Corp. v. Secretary of Labor*,
    364 F.3d 321 (D.C. Cir. 2004) ................................................................................................ 28

*Autor v. Blank*,
    892 F. Supp. 2d 264 (D.D.C. 2012) ................................................................................... 4, 26

*Autor v. Pritzker*,
    740 F.3d 176 (D.C. Cir. 2014) ................................................................................ 4, 6, 11, 25

*Bd. of Cty. Comm'rs v. Umbehr*,
    518 U.S. 668 (1996) ............................................................................................................. 12

*\*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*,
    532 U.S. 598 (2001) ...................................................................................................... *passim*

*Citizens for a Better Environment v. Steel Co.*,
    230 F.3d 923 (7th Cir. 2000) ............................................................................................... 14

*Citizens for Better Forestry v. USDA*,
    567 F.3d 1128 (9th Cir. 2009) ............................................................................................. 17

*Contractor's Sand & Gravel, Inc. v. Federal Mine Safety & Health Review Comm'n*,
    199 F.3d 1335 (D.C. Cir. 2000) .......................................................................................... 28

*Cooper v. U.S. R.R. Ret. Bd.*,
    24 F.3d 1414 (D.C. Cir. 1994) ............................................................................................ 28

*District of Columbia v. Jeppsen*,
    514 F.3d 1287 (D.C. Cir. 2008) .......................................................................................... 14

*District of Columbia v. Straus*,
    590 F.3d 898 (D.C. Cir. 2010) ...................................................................................... *passim*

*Elks National Foundation v. Weber*,
    942 F.2d 1480 (9th Cir. 1991) ............................................................................................ 14

*Environmental Defense Fund, Inc. v. Reilly*,
    1 F.3d 1254 (D.C. Cir. 1993) .............................................................................................. 21

*Fla. Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985) ............................................................................................................. 20

*Halverson v. Slater,*
    206 F.3d 1205 (D.C. Cir. 2000) ........................................................................... 27

*Hanrahan v. Hampton,*
    446 U.S. 754 (1980) .............................................................................. 7, 15, 20

*Hewitt v. Helms,*
    482 U.S. 755 (1987) ........................................................................... *passim*

*Hewitt v. Helms,,*
    780 F.2d 367 (6th Cir. 1986) ............................................................................. 17

*Hill v. Gould,*
    555 F.3d 1003 (D.C. Cir. 2009) ......................................................................... 24

*INS v. Jean,*
    496 U.S. 154 (1990) ........................................................................................ 24

*Johnson v. District of Columbia,*
    190 F. Supp. 2d 34 (D.D.C. 2002) ............................................................... 22, 23

*Kean for Congress Committee v. FEC,*
    2006 WL 89830 (D.D.C. Jan. 13, 2006) ...................................................... 19, 21

*Kirk v. New York State Dep't of Educ.,*
    644 F.3d 134 (2d Cir. 2011) .............................................................................. 19

*Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.,*
    589 F.3d 1027 (9th Cir. 2009) ................................................................. 12, 13, 18

*Lake Pilots Ass'n v. U.S. Coast Guard,*
    310 F. Supp. 2d 333 (D.D.C. 2004) ................................................................... 22

*Lobbyists on Agency Boards and Commissions,*
    75 Fed. Reg. 35,955 (June 23, 2010) ................................................................... 2

*Lynom v. Widnall,*
    222 F. Supp. 2d 1 (D.D.C. 2002) ................................................................. 20, 21

*Maher v. Gagne,*
    448 U.S. 122 (1980) .......................................................................................... 8

*Massachusetts Fair Share v. Law Enforcement Assistance Administration,*
    776 F.2d 1066 (D.C. Cir. 1985) ................................................................. 21, 22

*Melkonyan v. Sullivan*,
  501 U.S. 89 (1991)...................................................................................... 20

*Minnesota State Board for Community Colleges v. Knight*,
  465 U.S. 271 (1984).............................................................................. 4, 25

*New Life Evangelistic Center v. Sebelius*,
  847 F. Supp. 2d 50 (D.D.C. 2012) ............................................................ 21

*Perry v. Sindermann*,
  408 U.S. 593 (1972)...................................................................................... 4

*Pickering v. Board of Education*,
  391 U.S. 563 (1968).................................................................. 5, 11, 16, 21

*Pierce v. Underwood*,
  487 U.S. 552 (1988).......................................................................... 2, 24, 25

*Precision Concrete v. NLRB*,
  362 F.3d 847 (D.C. Cir. 2004) .................................................................... 28

*Rhodes v. Stewart*,
  488 U.S. 1 (1988) ........................................................................................ 17

*Rice Serv. v. United States*,
  405 F.3d 1017 (Fed. Cir. 2005).................................................................. 12

*\*Saysana v. Gillen*,
  614 F.3d 1 (1st Cir. 2010) ........................................................................... 25

*Scarborough v. Principi*,
  541 U.S. 401 (2004)..................................................................................... 28

*Select Milk Producers v. Johanns*,
  400 F.3d 939 (D.C. Cir. 2005) ........................................................ 9, 10, 18-19

*Shalala v. Schaefer*,
  509 U.S. 292 (1993)...................................................................................... 20

*Sierra Club v. Secretary of Army*,
  820 F.2d 513 (1st Cir. 1987)....................................................................... 26

*Sigmon Fuel Co. v. Tennessee Valley Authority*,
  754 F.2d 162 (6th Cir. 1985) ...................................................................... 27

*Sullivan v. Hudson*,
   490 U.S. 877 (1989) .................................................................................................. 20

*Taucher v. Brown-Hruska,*
   396 F.3d 1168 (D.C. Cir. 2005) ................................................................................ 28

*Texas State Teachers Association. v. Garland Independent School District*,
   489 U.S. 782 (1989) .................................................................................................... 8

*\*Thomas v. National Science Foundation*,
   330 F.3d 486 (D.C. Cir. 2003) ........................................................................... *passim*

*Turner v. Nat'l Transp. Safety Bd.*,
   608 F.3d 12 (D.C. Cir. 2010) ............................................................................ 10, 15

*United States ex rel. Grynberg v. Praxair, Inc.*,
   389 F.3d 1038 (10th Cir. 2004) ................................................................................ 14

*Waterman Steamship Corp. v. Maritime Subsidy Bd.*,
   901 F.2d 1119 (D.C. Cir. 1990) ......................................................................... 21, 22

## STATUTES

19 U.S.C. § 2155(c) ........................................................................................................ 2

28 U.S.C. § 2412(d) .................................................................................................... 7, 24

## RULES AND REGULATIONS

*Request for Nominations for the Industry Trade Advisory Committees (ITACs);*
   *Amendment*,
   79 Fed. Reg. 51,552 (August 29, 2014) ..................................................................... 6

*Revised Guidance on Appointment of Lobbyists to Federal Advisory Committees, Boards*
   *and Commissions*,
   79 Fed. Reg. 47,482 (August 13, 2014) ..................................................................... 6

*Final Guidance on Appointment of Lobbyists to Federal Boards and Commissions*,
   76 Fed. Reg. 61,756 (Oct. 5, 2011) ........................................................................... 3

Plaintiffs brought this action to challenge a government policy that excluded federally registered lobbyists from serving on certain industry trade advisory committees established pursuant to the Trade Act of 1974.  They sought a declaration that the policy was unconstitutional and an injunction to enjoin the government from precluding their participation on the basis of their status as federally registered lobbyists.  Although Plaintiffs secured an appellate reversal of this Court's order dismissing the case and a remand to this Court for further factual development, they did not receive any of the substantive relief they sought in the Complaint from either this Court or the Court of Appeals.  Rather, after this case was remanded to this Court, the government voluntarily revised the challenged policy so that it no longer bars federally registered lobbyists from serving on the industry trade advisory committees.  Following the government's voluntary change in conduct, Plaintiffs dismissed the case.  They now seek attorney's fees pursuant to the Equal Access to Justice Act ("EAJA").

Plaintiffs cannot satisfy the threshold requirement of showing that they are "prevailing parties" entitled to attorney's fees under EAJA.  Supreme Court and D.C. Circuit precedent is clear that to be a "prevailing party," a plaintiff needs to have obtained judicially sanctioned relief that materially alters the parties' legal relationship and provides the plaintiff with at least some of the relief it seeks in the Complaint.  *See Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604-05 (2001); *Thomas v. National Science Foundation*, 330 F.3d 486, 493 (D.C. Cir. 2003).  The term "prevailing party" does not include a plaintiff who has failed to secure such court-ordered relief, "but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct."  *Buckhannon*, 532 U.S. at 600.  Accordingly, even assuming for the purpose of this opposition that Plaintiffs' lawsuit brought about the government's change in policy, Plaintiffs are not "prevailing parties," and this Court should deny their application for attorney's fees.

1

Although this Court need not go further, Plaintiffs' fee application also can be denied on the basis that the government's position in this case was substantially justified because "a reasonable person could think [the government's position] correct." *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988).  This case raised a difficult issue of first impression about which there is little judicial precedent, and reasonable minds could differ as to its resolution.  Indeed, this Court agreed with the government's position, which is evidence that the government's position had "a reasonable basis in law and fact." *Id.*  Although the Court of Appeals reversed, it also recognized that the Supreme Court has "never addressed the question we face here." *Autor v. Pritzker*, 740 F.3d 176, 181 (D.C. Cir. 2014) (*Autor II*).  The Court of Appeals looked to analogous situations and ultimately borrowed an analytical framework from the federal employment context—a framework that neither party had relied on.  Given the novel issue raised in this case, the Court of Appeals' extension of law, and the government's reasonable arguments, EAJA precludes an award for attorney's fees here.

## BACKGROUND

### I.    The Lawsuit

Plaintiffs are six federally registered lobbyists who brought suit to challenge the implementation by the Department of Commerce ("DOC") and the Office of the United States Trade Representative ("USTR") of a Presidential policy of excluding federally registered lobbyists from Industry Trade Advisory Committees ("ITACs").  ITACs are established pursuant to the Trade Act of 1974, 19 U.S.C. § 2155(c)(2) (2006), for the Executive Branch to obtain information and advice from producers in individual industry sectors as the Executive Branch develops and implements U.S. trade policy.  ITAC members serve as representatives of U.S. manufacturers, service providers, trade associations and other organizations with a direct interest in international trade.

2

The challenged policy was one of several measures designed to promote public confidence in government and to ensure that federally registered lobbyists do not unduly dominate the flow of information to federal government officials.  Specifically, the President "direct[ed] the heads of executive departments and agencies not to make any new appointments or reappointments of federally registered lobbyists to advisory committees and other boards and commissions."  Presidential Memorandum, Lobbyists on Agency Boards and Commissions, 75 Fed. Reg. 35,955 (June 23, 2010).  Guidance issued by the Office of Management and Budget ("OMB") to implement the President's policy specified that the policy applied only to lobbyists subject to the Lobbying Disclosure Act of 1995 ("LDA").  Final Guidance on Appointment of Lobbyists to Federal Boards and Commissions, 76 Fed. Reg. 61,756 (Oct. 5, 2011).

The Complaint alleged that the exclusion of federally registered lobbyists from ITACs violated the First Amendment by "denying the benefit of committee service to individuals whose exercise of the right to petition triggers the LDA's registration requirement, while also interfering with the ability of the entities that seek the services of these lobbyists to communicate their views to the government."  Compl. ¶ 44.  The Complaint further alleged that the policy violated the equal protection component of the Fifth Amendment because it drew "an unconstitutional distinction between those who exercise their right to petition the government and those who do not."  *Id.* ¶ 53.  The Complaint sought a declaration "that the DOC and USTR exclusion of all federally registered lobbyists from ITACs [was] unconstitutional," and an injunction "[e]njoin[ing] the DOC and USTR from denying Plaintiffs' applications for ITAC membership on the basis of their status as federally registered lobbyists."  *Id.* at 16.

## II.    This Court's Dismissal of the Complaint

In February 2012, the government moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim.  On September 26, 2012, this Court rejected the

government's jurisdictional argument but granted the motion to dismiss for failure to state a claim. Order [Dkt. No. 16]; *Autor v. Blank*, 892 F. Supp. 2d 264 (D.D.C. 2012) (*Autor I*). The Court found that *Minnesota State Board for Community Colleges v. Knight,* 465 U.S. 271 (1984)—which recognized that the First Amendment does not confer a right to be heard by government decision makers and declined to recognize a "constitutional right to participate directly in government policymaking," *id*. at 284—foreclosed Plaintiffs' argument that the government had placed an unconstitutional condition on serving as a member of an ITAC. *Autor I*, 892 F. Supp. 2d at 273-74. This Court further held that, even if *Knight* were not controlling, Plaintiffs failed to satisfy the "unconstitutional conditions" doctrine—which, as articulated in *Perry v. Sindermann*, 408 U.S. 593 (1972), and its progeny, limits the government's power to condition governmental benefits on recipients' relinquishment of constitutionally protected rights. The Court held that the Complaint failed to support findings that (1) service on an ITAC was a valuable government benefit; and (2) Plaintiffs' constitutional right to petition the government was abridged or ITAC service was being denied to Plaintiffs because of their constitutionally protected activities. *Autor I*, 892 F. Supp. 2d at 275-82. Finally, the Court rejected Plaintiffs' Fifth Amendment equal protection claim, holding that the government's policy made no suspect classifications and was therefore subject only to rational-basis review, which the policy readily satisfied. *Id.* at 282-84.

## III.    The Court of Appeals' Decision

On appeal, the D.C. Circuit reversed, finding that Plaintiffs "have pled a viable First Amendment unconstitutional conditions claim," and have also pled an equal protection claim because they "plausibly alleged that the ban denie[d] them a benefit available to others on account of their exercise of a fundamental right." *Autor II*, 740 F.3d at 183, 184. The D.C. Circuit disagreed that *Knight* controlled this case. It observed that "although the Supreme Court

recognized that the government may choose to hear from some groups at the expense of others, it never addressed the question . . . whether, in so doing, the government may also limit the constitutional rights of those to whom it chooses to listen." *Id.* at 181. The Court found that this case is "more analogous to cases in which the government sought to curtail the First Amendment rights of government employees than it is to *Knight*." *Id.*

At the same time, the D.C. Circuit also rejected Plaintiffs' argument that the case could be resolved "through a straightforward application of *Perry*'s 'unconstitutional conditions' doctrine." *Id.* at 180. Plaintiffs had argued that if "ITAC service qualifie[d] as a governmental benefit and the registered-lobbyist ban require[d] them to curtail their right to petition government to receive this benefit, then . . . the government ha[d] unconstitutionally burdened their exercise of this right." *Id.* Although the D.C. Circuit agreed that ITAC service qualified as a government benefit, it found that any argument about whether the lobbyist policy constituted an unconstitutional burden was premature because the case was dismissed pursuant to a Rule 12(b)(6) motion. *Id.* at 182-83. Moreover, the Court held, governmental interests might justify the restrictions on ITAC members' exercise of fundamental rights. *Id.* As the Court reasoned, "[t]he Supreme Court has long sanctioned government burdens on public employees' exercise of constitutional rights that would be plainly unconstitutional if applied to the public at large." *Id.* at 183 (citation and internal quotation marks omitted). Although ITAC service differs from public employment, the Court observed that "the government's interest in selecting its advisors . . . implicates similar considerations that . . . may justify similar restrictions on individual rights." *Id.* at 183-84 (internal quotation marks and citation omitted). Thus, the Court held that the case should be more appropriately examined under the balancing test articulated in *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), which seeks to strike "a balance between the interests of the [government employee], as a citizen, in commenting upon matters of public concern and the

interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id*; *see Autor II*, 740 F.3d at 184.

Because the issue of *Pickering* was not briefed below, nor was the issue of whether *Pickering* applied to analyze Plaintiffs' equal protection claim, the D.C. Circuit remanded the case for this Court "to develop a factual record and undertake the *Pickering* analysis in the first instance." *Autor II*, 740 F.3d at 184.  In so doing, the D.C. Circuit also instructed this Court to ask the parties to "focus on the justification for distinguishing, as the lobbyist ban does, between corporate employees (who may represent their employers on ITACs) and the registered lobbyists those same corporations retain (who may not)." *Id.*  In addition, the D.C. Circuit suggested that this Court "[might] also want to ask the government to explain how banning lobbyists from committees composed of representatives of the likes of Boeing and General Electric protects the 'voices of ordinary Americans.'" *Id*.

## IV.   Events Following the Court of Appeals' Remand to the District Court

After the case was remanded, the government undertook a review of the challenged policy and decided to revise it.  On August 13, 2014, OMB issued a Revised Guidance on Appointment of Lobbyists to Federal Advisory Committees, Boards and Commissions, 79 Fed. Reg. 47,482 (August 13, 2014), which no longer disqualified federally registered lobbyists such as Plaintiffs from applying for membership on ITACs.  DOC and USTR then promptly implemented the revised policy.  *See* Request for Nominations for the Industry Trade Advisory Committees (ITACs); Amendment, 79 Fed. Reg. 51,552 (August 29, 2014).

On September 3, 2014, the parties filed a stipulation dismissing this case pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) ("Voluntary Dismissal by the Plaintiff").  Dkt. No. 28.  Plaintiffs indicated in that stipulation that they intended to file an application for

attorney's fees.[1]  *Id.* at 1.  This Court later granted the parties' joint motion to bifurcate the attorney's fee litigation, allowing the parties to first litigate the threshold question of whether Plaintiffs are entitled to attorney's fees under EAJA before litigating, if necessary, the reasonableness of Plaintiffs' fee request.

## ARGUMENT

## I.   PLAINTIFFS ARE NOT "PREVAILING PARTIES"

### A.   The Supreme Court's Decision in *Buckhannon*

Under EAJA, the Court shall award to a "prevailing party" fees and other expenses unless the position of the United States was "substantially justified" or special circumstances make an award unjust.  28 U.S.C. § 2412(d)(1)(A).

In *Buckhannon*, the Supreme Court interpreted the term "prevailing party" in a case where the plaintiff "failed to secure a judgment on the merits or a court-ordered consent decree" but "nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct."  532 U.S. at 600.  The plaintiff had sued the State of West Virginia and other individual and agency state actors, challenging a state statutory provision.  *Id.* at 600-01.  While discovery was still pending, the state legislature voluntarily repealed the contested provision, mooting the suit.  *Id.* at 601.  The plaintiff argued that it was a "prevailing party" under the "catalyst theory," which allows a plaintiff to recover attorney's fees if "the defendant's change in conduct was motivated by the plaintiffs' threat of victory."  *Id.* at 610.

The Supreme Court held that the plaintiff was not a "prevailing party" because the defendants' voluntary change in conduct, "although perhaps accomplishing what the plaintiff

---

[1] Plaintiffs inaccurately assert that they dismissed this action "on the condition that [OMB] modify and in relevant part repeal" the lobbyist policy.  Pls' Mot. at 1.  The parties have no such side agreement.  As discussed above, Plaintiffs voluntarily dismissed the case after OMB had revised the lobbyist policy and after the defendant agencies had implemented the revised policy.

sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id*. at

605.  In reaching that conclusion, the Court examined its precedent on the meaning of

"prevailing party."  *See id*. at 603-04.  In *Hewitt v. Helms*, 482 U.S. 755, 758, 763 (1987), for

example, a plaintiff did not prevail despite having received "a favorable judicial statement of law

in the course of litigation" because he ultimately did not receive "at least some relief on the

merits of his claims."  And in *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980) (*per curiam*), the

plaintiffs similarly were not "prevailing parties" because they had not prevailed "on the merits of

at least some of his claims" before the case became moot, even though they secured a reversal of

a judgment directing verdicts against them and a remand to conduct further discovery.  The

Supreme Court in *Buckhannon* also examined cases such as *Maher v. Gagne*, 448 U.S. 122

(1980), and *Texas State Teachers Association. v. Garland Independent School District.*, 489 U.S.

782 (1989), which stand for the proposition that settlement agreements "enforced through a

consent decree" can serve as the basis for an award of attorney's fees because a consent decree

"is a court-ordered change in the legal relationship" between the parties.  *Buckhannon*, 532 U.S.

at 604 (citation, internal quotation marks, and alterations omitted).

The *Buckhannon* court found that "these decisions, taken together, establish that

enforceable judgments on the merits and court-ordered consent decrees create the material

alteration of the legal relationship of the parties necessary to permit an award of attorney's fees."

*Id.* (citation and internal quotation marks omitted).  The catalyst theory, the Court reasoned,

"falls on the other side of the line from these examples" because "it allows an award where there

is no judicially sanctioned change in the legal relationship of the parties." *Id.* at 605.  And,

"[e]ven under a limited form of the 'catalyst theory,' a plaintiff could recover attorney's fees if it

established that the 'complaint had sufficient merit to withstand a motion to dismiss for lack of

jurisdiction or failure to state a claim on which relief may be granted.'" *Id.* at 605.  The Court

8

observed that "[t]his is not the type of legal merit that [its] prior decisions, based upon plain language and congressional intent," have found to be sufficient to confer "prevailing party" status.  *Id.*  "Instead," the Court said, "we held in *Hewitt* that an interlocutory ruling that reverses a dismissal for failure to state a claim 'is not the stuff of which legal victories are made.'"  *Id.* (quoting *Hewitt*, 482 U.S. at 760).

Notably, in rejecting the catalyst theory, the Supreme Court also found it unnecessary to determine "which way the[] various [proffered] policy arguments cut," "[g]iven the clear meaning of 'prevailing party' in the fee-shifting statutes" and the "holdings of [the Court's] prior cases."  *Id.* at 610.  Indeed, the Court noted that if the catalyst theory applied, major, yet wholly tangential, litigation would likely result because a district court would need to delve into a "highly factbound" inquiry of "the defendant's subjective motivations in changing its conduct," including, among other things, "whether the lawsuit was a substantial rather than an insubstantial cause of the defendant's change in conduct" and "whether the defendant's change in conduct was motivated by the plaintiff's threat of victory"—which "is clearly not a formula for ready administrability."  *Id.* at 609-10 (citation and internal quotation marks omitted).

## B.      The D.C. Circuit's Application of *Buckhannon*

Although *Buckhannon* involved the fee-shifting provisions of the Fair Housing Amendments Act ("FHAA") and the Americans with Disabilities Act ("ADA"), "it is now clear that *Buckhannon*'s construction of 'prevailing party' also applies to fee claims arising under EAJA."  *Select Milk Producers v. Johanns*, 400 F.3d 939, 945 (D.C. Cir. 2005).  In *Thomas v. National Science Foundation*, 330 F.3d 486, 493 (D.C. Cir. 2003), the D.C. Circuit observed that *Buckhannon* embraces "three core principles": (1) "in order to be a 'prevailing party,' a claimant must show that there has been a court-ordered change in the legal relationship between the plaintiff and the defendant"; (2) "the term 'prevailing party' is a legal term of art" defined to

mean "one who has been awarded some relief by the court"; and (3) "a claimant is not a 'prevailing party' merely by virtue of having acquired a judicial pronouncement that the defendant has violated the Constitution unaccompanied by *judicial* relief." *Id*. at 492-93 (citations and internal quotation marks omitted).

Applying these core principles, *Thomas* held that the plaintiffs in that case did not prevail despite having obtained a preliminary injunction and a partial summary judgment in their favor. There the plaintiffs brought suit to enjoin the government from spending monies collected for Internet registration services and to seek restitution of the registration fees. *Id.* at 488. The district court issued a preliminarily injunction, preserving the status quo. *Id.* at 493. It later also granted partial summary judgment in favor of the plaintiffs, holding that the registration fee was an unconstitutional tax. *Id.* Before the court was able to enter final judgment or issue an order awarding any monetary relief to the plaintiffs, Congress enacted a law that cured the constitutional violation in the collection of the registration fees, and the case became moot. *Id.* The court then vacated the preliminary injunction. *Id.* at 494.

The D.C. Circuit held that neither the vacated preliminary injunction nor the partial summary judgment "change[d] the legal relationship between the parties in a way that afforded [the plaintiffs] *the relief they sought in their lawsuit*." *Id.* at 493 (emphasis added). The Court reasoned that the preliminary injunction merely preserved the status quo and was in any event vacated, and the partial summary judgment did not afford the plaintiffs "any concrete relief, beyond [a] mere legal declaration" that the disputed registration fee was an unconstitutional tax. *Id*. As the Court observed, "*Buckhannon* and *Hewitt* make it clear that a 'mere judicial pronouncement that the defendant has violated the Constitution,' unaccompanied by '*judicial* relief,' is not sufficient to make a claimant a 'prevailing party.'" *Id.* at 494 (quoting *Buckhannon*, 532 U.S. at 606 and *Hewitt*, 482 U.S. at 761).

Following *Thomas*, D.C. Circuit cases have further distilled *Buckhannon*'s core principles into a three-part test:  to be a prevailing party, "(1) there must be a 'court-ordered change in the legal relationship' of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." *District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010) (citing *Thomas*, 330 F.3d at 492-93); *see also Select Milk Producers v. Johanns*, 400 F.3d 939, 947 (D.C. Cir. 2005); *Turner v. Nat'l Transp. Safety Bd.,* 608 F.3d 12, 15 (D.C. Cir. 2010).

### C.     Plaintiffs Cannot Meet the Standard for "Prevailing Party" Status.

#### 1.     *Buckhannon* controls because Plaintiffs obtained their desired result only through Defendants' voluntary change in policy.

Applying *Buckhannon* and the three-part test articulated by the D.C. Circuit, it is apparent that Plaintiffs are not "prevailing parties."  To begin with, Plaintiffs did not prevail on the merits of any of their claims, namely that the lobbyists policy violated their First and Fifth Amendment rights.  Nor did they receive any of the relief they sought, which were: (1) a declaration "that the DOC and USTR exclusion of all federally registered lobbyists from ITACs [was] unconstitutional," and (2) an injunction "[e]njoin[ing] the DOC and USTR from denying Plaintiffs' applications for ITAC membership on the basis of their status as federally registered lobbyists."  Compl. at 16.  Rather, this Court granted the government's motion to dismiss for failure to state a claim, and on appeal, the D.C. Circuit held only that Plaintiffs had pled "a *viable* First Amendment unconstitutional conditions claim" as well as a Fifth Amendment equal protection claim because they had "*plausibly alleged* that the [lobbyist] ban denie[d] them a benefit available to others on account of their exercise of a fundamental right."  *Autor II*, 740 F.3d at 183, 184 (emphasis added).  The case was then remanded to this Court "to develop a factual record and undertake the *Pickering* analysis in the first instance," *id.* at 184, which is a

11

"nuanced approach" that recognizes a "variety of interests" that may arise in an individual's work relationship with the government. *Bd. of Cty. Com'rs v. Umbehr*, 518 U.S. 668, 678 (1996).

Although the government no longer bars Plaintiffs from ITAC membership on the basis of their status as federally registered lobbyists, that was due to the government's voluntary revision of the lobbyist policy. Even assuming for purpose of this opposition that the revision came about as a result of this lawsuit, *Buckhannon* clearly has rejected a voluntary change in policy as a basis for "prevailing party" status. *Buckhannon*, 532 U.S. at 603; *see also Rice Serv. v. United States*, 405 F.3d 1017, 1019 (Fed. Cir. 2005) (plaintiff not a "prevailing party" because the relief it requested "ha[d], substantially, been voluntarily afforded by the [defendant]" and case was dismissed as moot).

Plaintiffs argue that they have prevailed because, as they characterize it, "[a]fter *Autor II*, the writing was on the wall with respect to the Lobbyist Ban," and as a result "the government promptly rescinded the Lobbyist Ban in relevant part, providing Plaintiffs with the complete relief they demanded in this litigation." Pls' Mot. at 7. But "[a] favorable determination on a legal issue, *even if it might have put the handwriting on the wall*, is not enough by itself" to confer "prevailing party" status. *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1030 (9th Cir. 2009) (citation and internal quotation marks) (emphasis added). Critical to the "prevailing party" analysis here is that it was the government's voluntary revision of the challenged policy, and not any court-ordered change, that brought about Plaintiffs' voluntary dismissal of this case. Plaintiffs' argument is precisely the "catalyst theory" rejected by *Buckhannon*. Despite the argument that the *Buckhannon* defendants' change in conduct was motivated by the plaintiff's threat of victory, the Supreme Court found the defendants' "subjective motivations in changing [their] conduct" irrelevant because the change

in conduct, "although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* at 604.  As the Court explained, the "material alteration of the legal relationship of the parties" must be "judicially sanctioned."  *Id.* at 604-05.  Thus, the D.C. Circuit's three-part test determining "prevailing party" status similarly requires, as the first element, a "court-ordered change in the legal relationship' of the parties," *Straus*, 590 F.3d 898, 901—which is plainly absent in this case.

### 2.        The interlocutory rulings in this case did not provide any judicial relief.

Plaintiffs insist that they have prevailed because they obtained "a number of favorable judicial determinations of their rights" that "alter[ed] their legal relationship with the government."  Pls' Mot. at 5.  They identify: (1) this Court's holding that they had standing to pursue their claims; (2) the D.C. Circuit's determination that their claims "are cognizable under the 'unconstitutional conditions' doctrine"; and (3) the D.C. Circuit's remand instructions, which Plaintiffs characterize as highly critical of the government's policy.  *Id.* at 6-8, 13.

None of these "determinations," however, is "accompanied by judicial relief"—which is a prerequisite to achieving "prevailing party" status.  *Straus*, 590 F.3d 898, 901.  "The material alteration in the legal relationship of the parties must be relief that the would-be prevailing party sought, for '[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail.'"  *Klamath Siskiyou Wildlands Ctr.*, 589 F.3d at 1030 (quoting *Hewitt*, 482 U.S. at 760); *accord Thomas*, 330 F.3d at 493.  "Whatever form it takes, the 'material alteration' must consist of actual *relief*, not merely a determination of legal merit."  *Klamath Siskiyou Wildlands Ctr.*, 589 F.3d at 1030.

Here, the rulings Plaintiffs identify were merely interlocutory.  All Plaintiffs can say is that "[a]fter *Autor II*," they "are now assured that any further attempts by the government to punish their petitioning activity by excluding them from ITACs or other advisory committees

13

will be subject to judicial scrutiny." Pls' Mot. at 6. That is hardly the type of judicial sanction that can serve as a basis for "prevailing party" status. *See Buckhannon*, 532 U.S. at 605. As noted before, even when a claimant has obtained a favorable judicial pronouncement of unconstitutionality, the claimant is still not a "prevailing party" if the pronouncement is unaccompanied by judicial relief. *See Thomas*, 330 F.3d at 494.

Plaintiffs cite *District of Columbia v. Jeppsen*, 514 F.3d 1287, 1290 (D.C. Cir. 2008), for the proposition that "parties have 'prevailed' where they have received a favorable jurisdictional ruling." Pls' Mot. at 5; *see id.* (noting *Jeppsen*'s collection of cases and the split of authority). But the issue discussed in *Jeppsen* and the split of authority noted in that case is "whether, in light of *Buckhannon*, a *defendant* 'prevails' when the case against it is dismissed for want of jurisdiction," *Jeppsen*, 514 F.3d at 1290 (emphasis added), or, whether "a judicial order dismissing the plaintiff's case for want of jurisdiction" results in a material alteration of the legal relationship of the parties to entitle the *defendant* to attorney's fees. *Id.* at 1290-91; *see id.* at 1290 (hypothesizing that, in certain circumstances, "[a] ruling on a jurisdictional ground . . . might give the *defendant* all it could receive from a judgment on the merits") (emphasis added). The other cases Plaintiffs cite (Pls' Mot. at 6) either similarly wrestle with that question, *see Citizens for a Better Environment v. Steel Co.*, 230 F.3d 923, 929-30 (7th Cir. 2000) (holding that a *defendant* could be a "prevailing party" when the plaintiff was found to lack standing); or are largely irrelevant to the "prevailing party" issue, *see United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1058 (10th Cir. 2004) (determining whether plaintiff's lawsuit was frivolous or vexatious to entitle defendant to attorney's fees where the case was dismissed for lack of subject matter jurisdiction); *Elks National Foundation v. Weber*, 942 F.2d 1480, 1485 (9th Cir. 1991) (procedural history indicates that case was dismissed for lack of subject matter

jurisdiction; determining whether defendant was entitled to fees because the lawsuit was meritless).

Whether a *defendant* is a "prevailing party" when a case is dismissed for lack of subject matter jurisdiction clearly presents a very different issue from a situation where, as here, the plaintiff is found to have standing to pursue his constitutional claims (but the case is dismissed for failure to state a claim), and obtains a reversal of the district court's dismissal of the complaint. In the former situation, the dismissal of a case can in appropriate circumstances alter the parties' legal relationship to the benefit of the defendant because, among other things, "[r]es judicata effect would certainly qualify as judicial relief" for the defendant. *Straus*, 590 F.3d at 902.[2] In the latter situation, however, all that the plaintiff has secured is an opportunity to continue to litigate the case to see if he can prevail on the merits of his claims.

Thus, the Supreme Court has explicitly rejected the argument that a plaintiff's success in being able to continue to litigate his case is sufficient by itself to confer "prevailing party" status. As noted before, *Buckhannon* rejected the "catalyst theory" in part because "[e]ven under a limited form of the 'catalyst theory,' a plaintiff could recover attorney's fees if it established that the 'complaint had sufficient merit to withstand a motion to dismiss for lack of jurisdiction or failure to state a claim on which relief may be granted." 532 U.S. at 604-05. And, Supreme Court precedent is clear that "an interlocutory ruling that reverses a dismissal for failure to state a claim"—which is the precise scenario here—"'is not the stuff of which legal victories are made.'" *Id.* at 605 (quoting *Hewitt*, 482 U.S. at 760).

---

[2] *But see Straus*, 590 F.3d at 902 (dismissal did not confer "prevailing party" status on defendant because the dismissal "protected the [defendant] from nothing at all," and the "favorable judicial pronouncement was 'unaccompanied by judicial relief'") (quoting *Thomas*, 330 F.3d at 493); *Turner v. Nat'l Transp. Safety Bd.*, 608 F.3d 12, 16 (D.C. Cir. 2010) (defendants not "prevailing parties" because the case against them was dismissed "without prejudice" and "there was nothing in [the] case analogous to judicial relief").

Similarly, *Hanrahan v. Hampton*, 446 U.S. 754, 759 (1980), a case discussed in

*Buckhannon*, held that obtaining an appellate reversal that allows the claimant to continue

litigating the case in the trial court is not sufficient by itself to confer "prevailing party" status,

because it is not known whether the claimant would ultimately succeed on some of the merits of

his claims.   There the criminal defendants secured an appellate reversal of judgment directing

verdicts against them and a remand to conduct further discovery, but the case became moot.   The

Supreme Court found that they were not "prevailing parties" because "[t]he Court of Appeals

held only that the respondents were entitled to a trial of their cause," *id.* at 758, and "[t]he jury

may or may not decide some or all of the issues in favor of the respondents."   *Id.* at 759.   "If the

jury should not do so on remand," the Court reasoned, "it could not seriously be contended that

the respondents had prevailed."   *Id.*   Similarly here, all Plaintiffs obtained from the appellate

reversal was an opportunity to develop a factual record and litigate the merits of their

constitutional claims under the *Pickering* balancing test.

As for the D.C. Circuit's remand instructions, they even more clearly do not confer

"prevailing party" status on Plaintiffs.   Again, even where the court has made a favorable

determination on a legal issue—which the D.C. Circuit did not do in its remand instructions—

"the judicial pronouncement must be accompanied by judicial relief" to confer "prevailing party"

status.   *Straus*, 590 F.3d at 901.

Thus, for example, in *Hewitt v. Helms*, 482 U.S. 755 (1987), another case discussed in

*Buckhannon*, the Supreme Court found that the prison inmate—who was seeking money

damages against prison officials for constitutional violations—was not a "prevailing party," even

though he had obtained a ruling that the prison officials violated his constitutional rights.   The

inmate did not receive any damages award due to official immunity, and his claims for injunctive

and declaratory relief had also become moot.   The Sixth Circuit held that the finding of

16

constitutional violations was "a form of judicial relief which serves to affirm the plaintiff's assertion that the defendants' actions were unconstitutional and which will serve as a standard of conduct to guide prison officials in the future." *Hewitt v. Helms*, 780 F.2d 367, 370 (6th Cir. 1986). The Sixth Circuit also said that its judicial pronouncement was "an important vindication of plaintiffs' rights" that is at least the equivalent of declaratory relief, just as a monetary settlement is the informal equivalent of relief by way of damages. *Id.* at 370-71.

The Supreme Court reversed, finding that "[t]he only 'relief' [the plaintiff] received was the moral satisfaction of knowing that a federal court concluded that his rights had been violated." *Id.* at 762. As the Court explained,

> In all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces--the payment of damages, or some specific performance, or the termination of some conduct. Redress is sought *through* the court, but *from* the defendant. This is no less true of a declaratory judgment suit than of any other action. The real value of the judicial pronouncement--what makes it a proper judicial resolution of a "case or controversy" rather than an advisory opinion--is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.*

*Id.* at 761. *Cf. Rhodes v. Stewart,* 488 U.S. 1, 4 (1988) (declaratory judgment that a prison policy violated plaintiffs' constitutional rights did not confer "prevailing party" status because plaintiffs were no longer in custody when the judgment issued and the judgment thus did not "affect[] the behavior of the defendant toward the plaintiff[s]").

The Ninth Circuit's decision in *Citizens for Better Forestry v. USDA*, 567 F.3d 1128 (9th Cir. 2009), is illustrative of the requirement of judicial relief. There, the plaintiff brought suit to challenge the government's promulgating of a new rule as violative of the National Environmental Policy Act ("NEPA"), among other laws. *Id.* at 1130. The district court dismissed the procedural challenges for lack of subject matter jurisdiction, and denied the plaintiff's motion for injunctive relief. *Id.* The Ninth Circuit reversed, holding that the

17

government had violated NEPA and remanded the case to the district court to determine whether injunctive relief was appropriate.  *Id.*  After the appellate decision was issued, the government withdrew the challenged rule and issued a new rule, and the plaintiff dismissed the case.  *Id.*

The Ninth Circuit held that its ruling that the government had violated the plaintiff's rights under NEPA did not confer "prevailing party" status because the plaintiff "never received a formal declaratory judgment or other relief from this or any other court."  *Id.* at 1132.  As the Ninth Circuit explained, a plaintiff must "receive some form of judicially-sanctioned relief, as a 'judicial *imprimatur*' is necessary to achieve the 'corresponding alteration in the legal relationship of the parties' that the Supreme Court has identified as a pre-requisite for prevailing party status."  *Id.* at 1132-33 (quoting *Buckhannon*, 532 U.S. at 605).

Here, no judicial relief accompanied the Court of Appeals' remand instructions or its interlocutory rulings.  Because "the sine qua non of prevailing party status is an enforceable, judicially sanctioned award of much of the relief the plaintiff sought," *Klamath Siskiyou Wildlands Center*, 589 F.3d at 1031, Plaintiffs are not "prevailing parties."

### D.     The Authorities Plaintiffs Rely Upon Confirm that Plaintiffs Are Not "Prevailing Parties."

The cases Plaintiffs cite further confirm that they are not "prevailing parties."  In *Select Milk Producers v. Johanns*, 400 F.3d 939 (D.C. Cir. 2005), the D.C. Circuit found that "*under certain circumstances*, a preliminary injunction, like a consent decree, may result in a court-ordered change in the legal relationship between the parties that is sufficient to make the plaintiff a 'prevailing party' under a fee-shifting statute like EAJA."  *Id.* at 945 (emphasis added).  The Court first explained that its prior decision in *Thomas* did not establish a *per se* rule that a preliminary injunction can never serve as the basis for "prevailing party" status.  *Id.*  Rather, *Thomas* held that in the particular circumstances of that case, the preliminary injunction—which

preliminarily enjoined the government from spending monies in a particular fund but was vacated when the case became moot—did not change the legal relationship between the parties. *Id.*

In contrast, the *Select Milk Producers* court found that the preliminary injunction in *that case* "effected a substantial change in the legal relationship between the parties and provided plaintiffs with concrete and irreversible relief."  *Id.* at 946.  There, certain milk producers sued to enjoin the government's implementation of a rule setting a separate price for Class III butterfat. The rule was to be applied retroactively and if implemented, would have caused the milk producers to suffer "an immediate loss of an estimated $5,000,000."  *Id.* at 941.  The district court issued a preliminary injunction enjoining the implementation of the rule.  The government then conducted a new rulemaking and issued a new regulation that did not include a separate price for Class III butterfat, thereby mooting the case.  *Id.* at 943.

The D.C. Circuit held that the milk producers were "prevailing parties" because the preliminary injunction was a "court-ordered change in the legal relationship between Milk Producers and the Secretary"; because "the court-ordered relief secured by Milk Producers was concrete and irreversible" as well as "permanent"; and because as a result of the court-ordered relief, Milk Producers "saved an estimated $5,000,000 that they would have otherwise been forced to pay."  *Id.* at 947.  Thus, "like the benefit plaintiffs receive through court-approved consent decrees," the Court reasoned, "the relief that Milk Producers received in this case was 'the product of, and bears the sanction of, judicial action *in the lawsuit.*'"  *Id.* at 947 (quoting *Buckhannon,* 532 U.S. at 618 (Scalia, J., concurring)).

There is, of course, no "concrete and irreversible relief" that bore the sanction of judicial action here.  All Plaintiffs received from the court rulings in this case is the ability to develop a factual record and litigate the merits of their claims.  *Cf. Kirk v. New York State Dep't of Educ.,*

644 F.3d 134 (2d Cir. 2011) (alien veterinarian challenging state laws restricting veterinarian licenses to U.S. citizens and lawful permanent residents "prevailed" when the district court declared the laws unconstitutional and the state issued him a license pursuant to the judgment, even though the appeal was subsequently dismissed as moot).

Citing *Kean for Congress Committee v. FEC*, Civil Action No. 04-0007 JDB, 2006 WL 89830, *3-*4 (D.D.C. Jan. 13, 2006), which involved a remand from the district court to an agency that was "predicated upon administrative error," Plaintiffs also argue that a remand can confer "prevailing party" status. But the "prevailing party" analysis in a case involving a remand to an agency following a finding of administrative error is very different from one involving a remand from an appellate court to a district court for further factual development to determine whether the plaintiff can prevail on the merits of his claims. In the first scenario, as discussed more fully below, the case is returned to an Executive Branch agency—which is commonly the only available and appropriate remedy—and a claimant can become a prevailing party if the remand "terminates the litigation with victory for the plaintiff." *Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 101-02 (1991); *Sullivan v. Hudson*, 490 U.S. 877, 887-92 (1989). In the second scenario, however, as is the case here, the case remains within the Judicial Branch and the claimant does not "prevail" until he obtains a judicially sanctioned order that provides him some relief on the merits of his claims. *Hanrahan*, the Supreme Court decision discussed above, clearly stands for this proposition.

As the district court case cited by *Kean for Congress Committee* observed, in the first scenario, "[i]n a civil action brought pursuant to the [Administrative Procedure Act], remand to the administrative agency is commonly the only available or appropriate remedy." *Lynom v. Widnall*, 222 F. Supp. 2d 1, 4-5 (D.D.C. 2002) (case cited in *Kean for Congress Committee*); *see also Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (in an agency review case, "[i]f

the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, *the proper course, except in rare circumstances, is to remand to the agency* for additional investigation or explanation") (emphasis added).

Thus, at least pre-*Buckhannon*, the D.C. Circuit had held that a plaintiff that has obtained a remand for further proceedings can be a "prevailing party" and be awarded the attorney's fees it incurred in obtaining the remand, if on remand it "ultimately succeeds on the merits of its underlying claim." *Environmental Defense Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993). Indeed, in both *Kean for Congress Committee* and *Lynom*, the remand proceedings before the agency did ultimately afford the plaintiff everything the plaintiff sought to obtain. *See Kean for Congress Committee*, 2006 WL 89830, *3-*4; *Lynom*, 222 F. Supp. 2d at 4. *Reilly* itself found, however, that the order of remand was sufficient to confer "prevailing party" status in that case. This is so because the suit was to challenge the agency's failure to subject an amendment of a rule to notice and comment, and the plaintiff achieved the purpose of its suit when the court vacated the amended rule, restored the original rule, and precluded the agency from reinstating the amendment without prior notice and comment. 1 F.3d at 1258.

Here, in contrast, Plaintiffs have simply survived a motion to dismiss. They have not succeeded on the merits of their claims on remand, nor does the remand itself constitute the remedy they seek. Instead, they obtained only an opportunity to litigate further the merits of their claims under the *Pickering* balance test, a doctrinal analysis that Plaintiffs previously did not urge the court to apply. Therefore, they stand in a far different position than plaintiffs in an administrative review case where the court remanded the matter to the agency upon a finding of administrative errors to be corrected by the agency.

Plaintiffs' reliance on another agency review case, *New Life Evangelistic Center v. Sebelius*, 847 F. Supp. 2d 50 (D.D.C. 2012), is similarly misplaced.  Plaintiffs cite *New Life Evangelistic Center* for the proposition that a plaintiff prevails where the terms of the remand are such that "a substantive victory will obviously follow."  *Id.* at 54 (quoting *Waterman Steamship Corp. v. Maritime Subsidy Bd.*, 901 F.2d 1119, 1123 (D.C. Cir. 1990)).  But neither *New Life Evangelistic Center* nor the D.C. Circuit decision it quoted, *Waterman Steamship Corp.*, involved such a scenario.  Instead, the proposition is from *Massachusetts Fair Share v. Law Enforcement Assistance Administration*, 776 F.2d 1066 (D.C. Cir. 1985), a pre-*Buckhannon* case cited by *Waterman*.  In that case, the Court found that the plaintiff was a "prevailing party" because despite the remand to the agency for further action, the plaintiff had established its entitlement to relief on the merits of its claims and there was no possibility that on remand the agency could deny the plaintiff the benefit sought in the litigation.  *Id.* at 1068.  Specifically, the agency "could not unilaterally deny [the plaintiff] funding on remand," and that was "precisely the point that [the plaintiff] litigated, and won."  *Id.*

Putting aside whether *Massachusetts Fair Share* remains good law post-*Buckhannon*, Plaintiffs here never obtained "an entitlement to relief on the merits of [their] claim[s]," as the plaintiff in *Massachusetts Fair Share* was able to achieve.  *Id.*  Thus, even if this case were an agency review case, the *Massachusetts Fair Share* line of cases is of no help to Plaintiffs.[3]

---

[3] Plaintiffs cite another agency review case for the proposition that a plaintiff prevailed when it "obtained 'a change in defendants' primary conduct in the real world.'"  Pls' Mot. at 8 (quoting *Lake Pilots Ass'n v. U.S. Coast Guard*, 310 F. Supp. 2d 333, 337 (D.D.C. 2004)).  *Lake Pilots Ass'n* is inapposite because the plaintiff in that case was successful in two of its claims, and as the Court found, "received the precise relief it sought, *i.e.*, a remand of the Final Rule to the Coast Guard to recalculate the pilotage rates in a manner consistent with the applicable regulations."  *Id.* at 337.  As the Court explained, "[t]hrough the lawsuit and the relief it obtained, plaintiff caused a change in defendants' primary conduct in the real world."  *Id.*  Here, again, Plaintiffs did not obtain any judicial relief, much less the relief they specifically sought,

Finally, Plaintiffs urge this Court to decline to extend *Buckhannon* beyond the facts of that case, just as the court did in *Johnson v. District of Columbia*, 190 F. Supp. 2d 34 (D.D.C. 2002). In *Johnson*, the court found "prevailing party" status based on a private settlement agreement. *Id.* at 45. The court noted that the D.C. Circuit had not addressed the issue, and that in any event, not awarding fees in the circumstances of that case "would undermine the purposes of [the Individuals with Disabilities Education Act]." *Id.*

*Johnson* is an anomalous case and is not applicable here. It is contrary to *Buckhannon*'s teaching that settlement agreements must be enforced through a consent decree to have the necessary judicial imprimatur to confer "prevailing party" status. *See Buckhannon*, 532 U.S. at 604; *id.* at 604 n.7 ("Private settlements do not entail the judicial approval and oversight involved in consent decrees."). And even assuming it can be reconciled with *Buckhannon*, *Johnson* is distinguishable because it involved a private settlement agreement. Here, by contrast, we have a voluntary change in conduct that mooted the case—the precise scenario in *Buckhannon*. Moreover, the D.C. Circuit has recognized that *Buckhannon* is "first and foremost, about the meaning of the term 'prevailing party'" and "establish[es] a framework" for construing and applying the "prevailing party" requirement more generally in federal fee-shifting statutes. *Thomas*, 330 F.3d at 492-93. *Buckhannon* directly controls this case, and there is no basis to deviate from the framework it established for assessing "prevailing party" status, a framework that the D.C. Circuit has consistently followed.

As for the policy considerations urged by Plaintiffs (*see* Pls' Mot. at 9-10), they are without merit and irrelevant. Plaintiffs argue that "it would have made no sense to require the Plaintiffs to litigate the matter to judgment simply so that they would qualify for prevailing-party

---

and the change in the government's conduct altering the parties' relationship was voluntarily made.

status." Pls' Mot. at 9.  But litigating the case to judgment on the merits was not an option for

Plaintiffs once the government voluntarily changed its policy and the case became moot.

Plaintiffs could not continue to litigate a moot case.  In any event, *Buckhannon* said that

"prevailing party" is a "legal term of art," and given the term's "clear meaning," the Court "need

not determine which way [the] various policy arguments cut."  *Buckhannon*, 532 U.S. at 603,

610.  Further, "[t]o disregard the clear legislative language and the holdings of our prior cases on

the basis of such policy arguments," the Court held, "would be [an] . . . assumption of a roving

authority" that Congress did not extend to the judiciary.  *Id.* at 610 (citation and internal

quotation marks omitted).  This Court similarly should not assume authority to depart from the

clear Supreme Court and D.C. Circuit precedent.

## II.      THE GOVERNMENT'S POSITION WAS SUBSTANTIALLY JUSTIFIED.

   Even if Plaintiffs are "prevailing parties," this Court should still deny their fee application

because the Government's position was substantially justified.  Under EAJA, the United States is

not liable for attorney's fees if its position was "substantially justified." 28 U.S.C.

§ 2412(d)(1)(A).  The Supreme Court has explained that "substantially justified" is "not

'justified to a high degree,' but rather 'justified in substance or in the main'—that is, justified to

a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565

(1988).  "[I]f a reasonable person could think it correct, that is, if it has a reasonable basis in law

and fact," no award of fees under EAJA is proper.  *Id.* at 566 n.2.  Moreover, as Congress has

made clear, the government need not show that it had a "substantial probability of prevailing" in

order to demonstrate that its position was substantially justified.  H.R. Rep. No. 96-1418 at 11

(1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4989-90.  *See also Hill v. Gould*, 555 F.3d 1003,

1006 (D.C. Cir. 2009) (the EAJA standard "demands more than mere non-frivolousness, but less

than a showing that the government's decision to litigate was based on a substantial probability

of prevailing") (citation and quotation marks omitted).  The government must, however, justify both the position it took during the litigation as well as "the action or failure to act by the agency upon which the civil action is based."  28 U.S.C. § 2412(d)(2)(D).  And, only one substantial justification finding "for the entire civil action is to be made."  *INS v. Jean*, 496 U.S. 154, 159 (1990).

Here, the government's position was "justified to a degree that could satisfy a reasonable person."  *Pierce,* 487 U.S. at 565.  First, this case raised an issue of first impression on which there is little judicial precedent.  *See Saysana v. Gillen*, 614 F.3d 1, 6 (1st Cir. 2010) ("Where . . . a case presents a novel issue and one on which there is little precedent, courts have found that an award of EAJA fees is not warranted.").  Although there is substantial First Amendment precedent, few cases involved the Petition Clause and certainly none involved the right to petition in the face of the government's countervailing discretion in the selection of its advisors. The government relied on *Minnesota v. Knight*, 465 U.S. at 283, a right to petition case, which held that "[t]he Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy."  This Court agreed that *Knight* was controlling, but the Court of Appeals did not.  Despite that disagreement, the Court of Appeals explicitly recognized that this case presents a novel issue, noting that "although the Supreme Court recognized the government may choose to hear from some groups at the expense of others, *it never addressed the question we face here*—whether, in so doing, the government may also limit the constitutional rights of those to whom it chooses to listen."  *Autor II*, 740 F.3d at 181 (emphasis added).  Indeed, there is also no lower court authority on the issue.

Moreover, it is indisputable that *Autor II* extended, for the first time, an analytical framework that has never been applied to the unique circumstances of this case.  Plaintiffs had argued that the case could be resolved "through a straightforward application of *Perry*'s

'unconstitutional conditions' doctrine." *Id.* at 180.  The government disagreed on the basis that

the lobbyist policy imposed no unconstitutional burden.[4]  The Court of Appeals rejected both

sides' arguments, finding instead that the *Pickering* balancing test—which examines the

government's curtailment of government employees' First Amendment rights in the employment

context—should apply.  *Id.* at 183.  Although recognizing that "*ITAC service differs from public*

*employment*," the Court found that "the government's interest in selecting its advisors . . .

implicates *similar* considerations that [the Court believes] may justify similar restrictions on

individual rights."  *Id.* at 183-84 (emphasis added); *id.* at 181 (noting that this case is "more

analogous to cases in which the government sought to curtail the First Amendment rights of

government employees than it is to *Knight*").  This is clearly an extension of law, one that even

Plaintiffs themselves did not urge.  All Plaintiffs have said about *Pickering* in their filings was

that the D.C. Circuit "ha[d] not yet decided the distinct question whether the doctrine of

*Pickering* . . . applies to volunteers."  Pls' Suppl. Br [Dkt. No. 13-1], filed June 20, 2012, at 4

n.3; Appellants' Br., Case No. #12-5379 [Doc #1434539], filed May 6, 2013, at 25 n.8.

      Under these circumstances, the government reasonably relied on what it saw as the most

relevant Supreme Court precedent, *Minnesota v. Knight*, rather than discerning that, on

subsequent appellate review, the *Pickering* balancing test would be seen as providing the

---

[4] In moving to dismiss in this Court, the government had also argued that ITAC membership was not a government benefit of the type cognizable under the unconstitutional conditions doctrine (which typically includes government funding, grants, public employment, and tax benefits), and that even if it were, ITAC membership was not a benefit personal to the individual lobbyists.  In agreeing with the government, this Court looked to the various contexts in which the claim of unconstitutional conditions arose, and found that "in each of these contexts, the plaintiffs were deprived of a nontrivial economic benefit." *Autor I*, 892 F. Supp. 2d at 275.  Importantly, this Court also recognized that "neither the Supreme Court nor this Circuit has required the benefit in an unconstitutional conditions claim to have measurable economic worth." *Id.*  In other words, this Court, too, was grappling with the limited judicial guideposts available to resolve the novel issue presented in this case.

appropriate framework for analysis.  This is particularly true given that this Court also relied on *Minnesota v. Knight* in dismissing this case for failure to state a claim.  *See Porter v. Heckler*, 780 F.2d 920, 922 (11th Cir. 1986) ("a district court victory may be evidence that the Government's position was justified"); *Sierra Club v. Sec'y of Army*, 820 F.2d 513, 519 (1st Cir. 1987) (government's "early success" is "some evidence of justification which the court should factor into the EAJA analysis"); *Sigmon Fuel Co. v. Tenn. Valley Auth.,* 754 F.2d 162, 167 (6th Cir. 1985) ("a victory in the district court is evidence that [the government's] position was not frivolous").

Moreover, the D.C. Circuit did not come to a conclusion on the merits of Plaintiffs' constitutional claims; it only remanded the case to this Court for further proceedings.  Plaintiffs argue that the government's position was not substantially justified because the D.C. Circuit was "critical of the government's litigation position" and did not take issue with Plaintiffs' own negative characterization of the government's position.  Pls' Mot. at 10.  But that cannot establish lack of substantial justification.  As the D.C. Circuit has said, "[w]e . . . think it would be unwise for a prevailing party's eligibility for EAJA fees to turn solely on the particular words a particular merits panel uses to describe the Government's position."  *Halverson v. Slater*, 206 F.3d 1205, 1212 (D.C. Cir. 2000).  The fact that a merits panel described the government's position in various ways, "including 'patently erroneous' and 'irreconcilable with' canons of construction," is not dispositive of the substantial justification question because "another panel equally unpersuaded by the [government] might have used words like 'unsupported,' 'unconvincing,' or simply 'without merit.'"  *Id.*

In fact, even where the government lost *on the merits* at the district court or on appeal, which is not the case here, such loss would not raise the presumption that the government's position was not substantially justified.  *See* H.R. Rep. No. 96-1418, at 11 (1980); *see also*

27

*Scarborough v. Principi*, 541 U.S. 401, 415 (2004) ("Congress did not, however, want the 'substantially justified' standard to 'be read to raise a presumption that the Government position was not substantially justified simply because it lost the case'") (quoting H.R. Rep. No. 96-1005, at 10); *Pierce*, 487 U.S. at 569 (the Government "could take a position that is substantially justified, yet lose"); *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1174 (D.C. Cir. 2005) ("a loss on the merits does not mean that legal arguments advanced in the context of our adversary system were unreasonable"); *Cooper v. United States R.R. Retirement Bd.*, 24 F.3d 1414, 1416 (D.C. Cir. 1994) (the inquiry into the reasonableness of the Government's position under EAJA "may not be collapsed into our antecedent evaluation of the merits, for EAJA sets forth a 'distinct legal standard'") (quoting *FEC v. Rose*, 806 F.2d 1081, 1089 (D.C. Cir. 1986)).

Finally, the government's position also suffers from none of the defects common to positions that are not substantially justified.  It was not "flatly at odds with the controlling case law," *Am. Wrecking Corp. v. Sec'y of Labor*, 364 F.3d 321, 326-27 (D.C. Cir. 2004) (internal quotation marks omitted), and the government certainly did not press its position in "the face of an unbroken line in authority," *Precision Concrete v. NLRB*, 362 F.3d 847, 851-52 (D.C. Cir. 2004), or against a "string of losses," *Contractor's Sand & Gravel, Inc. v. Federal Mine Safety & Health Review Comm'n*, 199 F.3d 1335, 1341 (D.C. Cir. 2000) (internal quotation marks omitted).  To the contrary, as discussed before, both this Court and the Court of Appeals grappled with finding the applicable analytical framework that would govern the resolution of the novel issue raised in this case.  Under these circumstances, a reasonable person certainly could think that the government's position was reasonable.  Accordingly, a fee award is inappropriate.

**CONCLUSION**

For the foregoing reasons, this Court should deny Plaintiffs' application for attorney's

fees.

Dated: November 7, 2014                                  Respectfully Submitted,

                                                        JOYCE R. BRANDA
                                                        Acting Assistant Attorney General

                                                        RONALD C. MACHEN, JR.
                                                        United States Attorney

                                                        JOHN R. GRIFFITHS
                                                        Branch Director

                                                        /s/  *Jean Lin*
                                                        _____
                                                        JEAN LIN
                                                        Senior Trial Counsel
                                                        U.S. Department of Justice
                                                        Civil Division
                                                        Federal Programs Branch
                                                        20 Massachusetts Avenue, NW
                                                        Washington, DC 20530
                                                        Phone:  (202) 514-3716
                                                        Fax:  (202) 616-8470
                                                        email:  jean.lin@usdoj.gov

                                                        *Counsel for Defendants*