**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ERIK O. AUTOR *et al.* | |
| Plaintiffs, | |
| v. | Case No. 1:11-cv-01593 (ABJ/GMH) |
| REBECCA M. BLANK *et al.* | |
| Defendants. | |

**MEMORANDUM OPINION**

On February 23, 2015, this case was referred to the undersigned for resolution of plaintiffs' motion for attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.[1]  See Mot. at 1.  This motion comes after plaintiffs' voluntary dismissal of their civil action against the Department of Commerce and the United States Trade Representative, which challenged the government's policy of excluding federally-registered lobbyists from serving on Industry Trade Advisory Committees.  Id.  For the reasons stated below, plaintiffs' motion will be denied.

**I.    BACKGROUND**

**A.    The Lobbyist Ban**

On June 19, 2010, President Obama issued an Executive Memorandum directing agency and executive department heads "not to make any new appointments or reappointments of federally registered lobbyists to boards and commissions."  Presidential Memorandum, Lobbyists on Agency Boards and Commissions, 75 Fed. Reg. 35,955, 35,955 (June 18, 2010).  The Office

---

[1] The operative docket entries for purposes of this Order are as follows:  (1) Plaintiffs' Motion for Attorney Fees ("Mot.") [Dkt. 31]; (2) Plaintiffs' Complaint ("Compl.") [Dkt. 1]; (3) Stipulation of Dismissal ("Stip. Dismissal") [Dkt. 28]; (4) Defendants' Memorandum in Opposition to Plaintiffs' Motion for Attorney Fees ("Def. Opp.") [Dkt. 36]; (5) Plaintiffs' Reply in Support of Motion for Attorney Fees ("Pl. Reply") [Dkt. 37].

of Management and Budget ("OMB") implemented the President's policy.  Final Guidance on

Appointment of Lobbyists to Federal Boards and Commissions, 76 Fed. Reg. 61756-01 (Oct. 5,

2011); Autor v. Pritzker, 740 F.3d 176, 179 (D.C. Cir. 2014) ("Autor II").  Known as the

Lobbyist Ban, the policy applied to (among other groups) Industry Trade Advisory Committees

("ITACs") established by the United States Trade Representative and the Department of

Commerce.  Autor v. Blank, 892 F. Supp. 2d 264, 267 (D.D.C. 2012) ("Autor I"), rev'd sub nom.

Autor II, 740 F.3d 176.  ITACs are presidentially established advisory committees that provide

federal consultation with the private sector regarding United States trade policy, including trade

agreement negotiations, development, operations, and implementation.  See 19 U.S.C. §

2155(a)(1)(2).  The purpose of ITACs is to "be representative of all industry, labor, agricultural,

or service interests (including small business interests) in the sector or functional areas

concerned."  Id. § 2155(c)(2).

Plaintiffs are six federally registered lobbyists who brought a constitutional challenge to

the policy barring them from serving on ITACs.  Compl. ¶¶ 5–6.  Plaintiffs asserted two claims.

See id.  First, plaintiffs alleged that the Lobbyist Ban violated the First Amendment Petition

Clause by denying them the right to serve on ITACs because of their federal registration.  Id. ¶

44.  Second, plaintiffs alleged that the Ban violated the Fifth Amendment Equal Protection

Clause by "draw[ing] an unconstitutional distinction between those who exercise their right to

petition the Government and those who do not."  Id. ¶ 53.

### B.    The District Court's Dismissal of the Complaint

Following the filing of the complaint, the government moved to dismiss for lack of

subject-matter jurisdiction – specifically, for lack of standing – and for failure to state a claim

under Federal Rule of Civil Procedure 12(b)(6).  Autor I, 892 F. Supp. 2d at 267–68.  The district

court denied the first motion but granted the second.  Id.  On the standing issue, the government

argued that plaintiffs did not suffer an injury in fact by being barred from ITAC service.  Id. at

271.  However, the Court explained that plaintiffs suffered a cognizable injury because they

claimed that denial of ITAC service deprived them of professional experience and personal

satisfaction.  Id. at 273.

Although the Court found that plaintiffs had standing, it dismissed plaintiffs' two claims

for failure to state a claim.  As to their First Amendment claim, plaintiffs argued that the

unconstitutional conditions doctrine, articulated in Perry v. Sindermann, 408 U.S. 593 (1972),

was the proper framework for assessing their claim.  Autor I, 892 F. Supp. 2d at 274.  However,

the district court concluded that it was bound by Minnesota State Board for Community Colleges

v. Knight, 465 U.S. 271 (1984), which held that the First Amendment does not "grant members

of the public any particular right to be heard by public bodies making policy decisions."  Autor I,

892 F. Supp. 2d at 274 (citing Knight, 465 U.S. at 283).  Moreover, the Court found that even if

Perry was the correct standard, plaintiffs had not stated an unconstitutional-conditions claim.  Id.

Such a claim derives from Perry's holding that "even though a person has no 'right' to a valuable

governmental benefit and even though the government may deny him the benefit for any number

of reasons, . . . [i]t may not deny a benefit to a person on a basis that infringes his constitutional

protected interests – especially, his interest in freedom of speech."  Perry, 408 U.S. at 597.  The

Court found that plaintiffs had failed to show (1) that ITAC membership was a valuable

government benefit and (2) that exclusion from ITACs infringed upon their right to petition.

Autor I, 892 F. Supp. 2d at 275–82.

As to plaintiffs' equal protection claim, the Court found that the only distinction the Ban

made was between "those whose lobbying activities trigger the statutory registration requirement

and those whose activities do not," and that plaintiffs "did not argue that those triggering

circumstances – as opposed to the lobbying activities themselves – are constitutionally

protected." Id. at 282.  Finding that the Ban created no suspect classification, the Court

employed rational basis review.  Id. at 282–84.  Under this deferential standard, it found that the

Ban was rationally related to the government's interest in reducing the influence of special

interests.  Id. at 284.  Accordingly, the Court dismissed the complaint for failure to state a claim

under Rule 12(b)(6).

### C.      The D.C. Circuit's Reversal and Remand Order

On appeal, the D.C. Circuit reversed.  First, the Court of Appeals found that plaintiffs

pled a viable First Amendment claim because "they allege[d] that the government [conditioned]

their eligibility for the valuable benefit of ITAC membership on their willingness to limit their

First Amendment right to petition government."  Autor II, 740 F.3d at 183.  In so holding, the

D.C. Circuit found that Knight did not control.  Id.  Distinguishing Knight, "in which the alleged

burden on the teachers' First Amendment rights resulted from the union's exclusion of them

from the 'meet and confer' committees," the D.C. Circuit reasoned that in this case, "any burden

on [plaintiffs'] constitutional rights results directly from the government's decision to bar them

from ITAC membership."  Id. (emphasis in original).  Acknowledging the novelty of the instant

case, the D.C. Circuit noted that "although the Supreme Court [in Knight] recognized that the

government may choose to hear from some groups at the expense of others, it never addressed

the question we face here – whether, in so doing, the government may also limit the

constitutional rights of those to whom it chooses to listen."  Id.

The D.C. Circuit also disagreed with the district court's finding that the Lobbyist Ban

"neither deprived [plaintiffs] of a valuable benefit nor burdened their right to petition."  Id. at

181–82.  Though the benefits of ITAC membership did not necessarily have quantifiable

economic worth, the D.C. Circuit recognized that a benefit need only have value to those who

seek it.  Id. at 182.  The Court of Appeals explained that because the ITAC membership did have

value to plaintiffs, withholding this benefit could pressure plaintiffs into forgoing the exercise of

their constitutional rights.  Id.  As a result, it concluded that plaintiffs stated a Perry

unconstitutional-conditions claim.  Id. at 183.

However, the D.C. Circuit went further, holding that Perry was not the end of the

analysis.  The Court of Appeals found that the inquiry defined in Pickering v. Board of

Education, 391 U.S. 563, 568 (1968), which analyzed government limits on the First

Amendment rights of government employees, must also be applied.  Autor II, 740 F.3d at 183–

84.  As the D.C. Circuit explained, "[t]he Supreme Court has long sanctioned government

burdens on public employees' exercise of constitutional rights 'that would be plainly

unconstitutional if applied to the public at large.'"  Id. (quoting United States v. National

Treasury Employees Union, 513 U.S. 454, 465 (1995)).  Pickering developed a test for this

circumstance which balances "the interests of the [government employee] in commenting upon

matters of public concern and the interest of the State, as an employer, in promoting the

efficiency of the public services it performs through its employees."  Pickering, 391 U.S. at 568.

Because Pickering was "virtually unbriefed" by the parties, the D.C. Circuit remanded

the case to "develop a factual record and undertake the Pickering analysis in the first instance."

Autor II, 740 F.3d at 184.  On remand the Court of Appeals instructed the district court to "ask

the parties to focus on the justification for distinguishing, as the Lobbyist Ban does, between

corporate employees (who may represent their employers on ITACs) and the registered lobbyists

those same corporations retain (who may not)."  Id.  The D.C. Circuit further recommended that

the district court "ask the Government to explain how banning lobbyists from committees composed of representatives of the likes of Boeing and General Electric protects the 'voices of ordinary Americans.'" Id. (quoting Presidential Memorandum, 75 Fed. Reg. at 35, 955).

In closing, the D.C. Circuit reversed on the dismissal of plaintiffs' Fifth Amendment claim, finding that "because [the plaintiffs] plausibly alleged that the ban denies them a benefit available to others on account of their exercise of a fundamental right, we must reverse the district court's dismissal of their equal protection claim as well." Id. (citing Tele-Communications of Key West Inc. v. U.S., 757 F.2d 1330, 1340 (D.C. Cir. 1985)).

### D.     Events Following the D.C. Circuit's Remand

Five months after the remand order, and prior to any further proceedings in the district court, the government revised the Lobbyist Ban.  On August 13, 2014, OMB issued an amended policy stating "[t]he Lobbyist Ban does not apply to lobbyists who are appointed in a 'representative capacity,' meaning that they are appointed for the express purpose of providing a committee with the views of a non-governmental entity, a recognizable group of persons . . . or state or local Government."  Mot. at 4; Revised Guidance on Appointment of Lobbyists to Federal Advisory Committees, Boards, and Commissions, 79 Fed. Reg. 47,482-01, 47482 (Aug. 13, 2014).  The government then adopted this revised policy for its ITAC nomination process, allowing federally registered lobbyists to apply for membership.  Department of Commerce, "Request for Nominations for the Industry Trade Advisory Committees (ITACs); Amendment" 75 Fed. Reg. 24,584-01, 24585 (Aug. 29, 2014).  Following these changes, plaintiffs voluntarily dismissed their claims.  See Stip. Dismissal.  On October 17, 2014, plaintiffs filed the instant

motion for attorneys' fees pursuant to the EAJA, claiming that they are entitled to attorneys' fees after successfully obtaining relief from the government's Lobbyist Ban.  Mot. at 4–5.[2]

## II.     LEGAL STANDARD

The EAJA provides that the Court "shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).  To be entitled to an award of fees in this case, plaintiffs bear the burden to show that they prevailed.  Thomas v. Nat'l Sci. Found., 330 F.3d 486, 492–93 (D.C. Cir. 2003).

Important to the analysis of the fee petition here, the Supreme Court held in Buckhannon that a plaintiff is not a prevailing party where her lawsuit serves as a mere "catalyst" for the government's voluntary decision to change its policy.  Buckhannon Bd. & Care Home, Inc. v. W.V. Dept. of Health & Human Res., 532 U.S. 598, 605 (2001).  There, the plaintiffs brought suit against West Virginia, claiming that a state policy violated the Fair Housing Amendments Act and the Americans with Disabilities Act.  Id.  Shortly after the lawsuit was filed, the West Virginia legislature enacted two bills eliminating the policy.  Id.  The government moved to dismiss the case as moot, which the district court granted.  Id.  The plaintiffs then sought to recover their fees and costs as the prevailing parties.  Id.

The Buckhannon Court rejected the argument that a party is deemed the "prevailing party" under a fee shifting statute when that party's litigation served as the mere "catalyst" for voluntary government action.  Id. at 605.  The Court reasoned that such a theory "allows an award where there is no judicially sanctioned change in the legal relationship of the parties."  Id. The Court further noted that "[a] defendant's voluntary change in conduct, although perhaps

---

[2] Pursuant to this Court's order of October 8, 2014, the instant motion addresses only plaintiffs' eligibility for attorneys' fees and not the amount or reasonableness of any fees.  See October 8, 2014 Order.

accomplishing what the plaintiffs sought to achieve by the lawsuit, lacks the necessary judicial

imprimatur on the change." Id. Particularly relevant here, the Court observed that

> [e]ven under a limited form of the "catalyst theory," a plaintiff could recover
> attorney's fees if it established that the "complaint had sufficient merit to
> withstand a motion to dismiss for lack of jurisdiction or failure to state a claim on
> which relief may be granted." This is not the type of legal merit that our prior
> decisions, based upon plain language and congressional intent, have found
> necessary. Indeed, we held in Hewitt that an interlocutory ruling that reverses a
> dismissal for failure to state a claim "is not the stuff of which legal victories are
> made."

Id. (quoting Hewitt v. Helms, 482 U.S. 755, 760 (1987)) (internal citations omitted).

The D.C. Circuit has developed a three-part test, derived from Buckhannon, to determine

whether a party is a prevailing party for purposes of the EAJA. Thomas, 330 F.3d at 492–93

(citing Buckhannon, 532 U.S. at 603–06). That test requires that: (1) there was a court-ordered

change in the legal relationship of the parties; (2) the claimant received a favorable judgment,

regardless of the amount of damages rewarded; and (3) the judicial pronouncement was

accompanied by judicial relief. Id. This test is normally satisfied when a party achieves an

enforceable judgment on the merits or a court-ordered consent decree. Initiative & Referendum

Inst. v. U.S. Postal Service, No. 14-5089, 2015 WL 4385288, at *3 (D.C. Cir. July 17, 2015). A

favorable statement of law is usually insufficient. Waterman S.S. Corp. v. Maritime Subsidy

Bd., 901 F.2d 1119, 1122 (D.C. Cir. 1990) (citing Hewitt, 482 U.S. at 762). Instead, a court

order must afford the plaintiff some relief actually sought in the lawsuit. Thomas, 330 F.3d at

493; Select Milk Producers, Inc. v. Johanns, 400 F.3d 939, 948 (D.C. Cir. 2005) (requiring some

"concrete and irreversible judicial relief" to meet the Thomas test).

However, a less-than-total victory can also be sufficient. For example, plaintiffs may

achieve "prevailing party" status when the "terms of a remand [are] such that a substantive

victory will obviously follow." Waterman, 901 F.2d at 1123; see also Sullivan v. Hudson, 490

U.S. 877, 886 (1989) (plaintiff may be prevailing party where remand "necessarily dictate[s] the receipt of benefits").  Plaintiffs may also be considered prevailing parties if they "'succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit.'"  <u>Waterman</u>, 901 F.2d at 1121 (quoting <u>Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 791 (1989)).  Nevertheless, in this Circuit, "benefit" means "something more than an enhanced legal position in a proceeding that ultimately fails to supply any material relief."  <u>Id.</u> at 1122.

## III.   DISCUSSION

This case involves a straightforward application of the <u>Thomas</u> test.  Plaintiffs' two "victories" – the district court's ruling on standing and the Court of Appeals' reversal of the government's motion to dismiss – fall well short of satisfying that test.  First, neither the district court nor the D.C. Circuit mandated a change in the legal relationship of the parties.  The district court only denied the government's jurisdictional challenge.  <u>See</u> <u>Autor I</u>, 892 F. Supp. 2d at 267–68.  Similarly, the D.C. Circuit merely concluded that the plaintiffs' First Amendment and Fifth Amendment claims were viable.  <u>Autor II</u>, 740 F.3d 181–83.  It then remanded to the district court to apply <u>Pickering</u> to determine if the plaintiffs' rights were, in fact, violated.  <u>Id.</u> at 184.  Through these orders, plaintiffs merely avoided the dismissal of their claims.  Following remand, they regained the status quo and were back in the position they originally occupied in the lawsuit.  In short, nothing about their relationship with the government had changed.[3]  <u>See</u> <u>Von Luetzow v. Dir., Office of Pers. Mgmt.</u>, 562 F. Supp. 684, 686 (D.D.C. 1983) (refusing to

---

[3] Plaintiffs cite <u>Johnson v. District of Columbia</u>, a case from this District addressing an award of attorneys' fees under the IDEA.  Mot. at 9–10.  <u>Johnson</u> does not alter the result in this case.  <u>Johnson v. Dist. of Columbia</u>, 190 F. Supp. 2d 34 (D.D.C. 2002).  There, the parties entered into a private settlement agreement during the course of administrative proceedings.  <u>Id.</u> at 45.  The district court found that this settlement was sufficient for the plaintiffs to qualify as prevailing parties.  <u>Id.</u> at 46.  This Court cannot discern the relevance of <u>Johnson</u> to the instant case, where no settlement was reached.  Instead, plaintiffs voluntarily dismissed their claims in this case, leaving their legal relationship with defendant unaltered.

award fees where the plaintiffs "has regained the status quo rather than prevailed"); Hanrahan v. Hampton, 446 U.S. 754, 758 (1980) (plaintiffs did not prevail after reversal of directed verdicts on appeal because "[t]he Court of Appeals held only that the [plaintiffs] were entitled to a trial of their cause").

Second, the orders of the district court and the D.C. Circuit also do not satisfy the second prong of the Thomas test as they did not provide the plaintiffs with a favorable judgment. The D.C. Circuit did not take a position as to whether the government's policy was constitutional. Instead, the Court of Appeals directed that the Pickering balancing test should be employed to make the final determination of constitutionality. See Autor II, 740 F.3d 181–83. It then remanded for consideration by the district court in the first instance of the merits of plaintiffs' claims using the Pickering test. Id.; Citizens for Better Forestry v. U.S. Dept. of Agr., 567 F.3d 1128, 1132 (9th Cir. 2009) (fee claim denied where no formal judicial relief was provided, merely remand to trial court for consideration of merits). Similarly, the district court's ruling concerning plaintiffs' standing to bring suit was in no way directed at the merits of their claims. See Autor I, 892 F. Supp. 2d at 269 (observing that plaintiffs' factual allegations must be taken as true on a motion to dismiss for lack of standing). The threshold question of standing should be (and was in this case) decided without probing the merits of plaintiffs' claims. City of Waukesha v. EPA, 320 F.3d 228, 235 (D.C. Cir. 2003) ("[I]n reviewing [a] standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims.").

Third, neither the ruling of the district court nor that of the D.C. Circuit provided plaintiffs with any judicial relief as is required by the third prong of the Thomas test. In their complaint, plaintiffs sought a declaration that the Ban was unconstitutional and an injunction

against its enforcement.  Compl. at 16.  The district court's order on standing was interlocutory and did not afford plaintiffs any of the relief they sought in their suit.  Nothing about the district court's decision was "concrete" or "irreversible."  Select Milk Producers, 400 F.3d at 948.  Likewise, the D.C. Circuit's remand order did not direct the government to rescind the Lobbyist Ban or instruct the district court to order the government to change its policy.  See Autor II, 740 F.3d at 184.  Thus, even assuming that the D.C. Circuit provided plaintiffs with a favorable statement of law, it did not grant plaintiffs any specific relief identified in their complaint, i.e., a declaratory judgment or an injunction.  Thomas, 330 F.3d at 493–94.  Indeed, Thomas held that "Buckhannon and Hewitt make it clear that a mere 'judicial pronouncement that the defendant has violated the Constitution,' unaccompanied by 'judicial relief,' is not sufficient to make a claimant a 'prevailing party.'"  Id. at 494 (quoting Buckhannon, 532 U.S. at 606) (emphasis in original).  Here, the D.C. Circuit neither held the Ban unconstitutional nor granted any relief.  Autor II, 740 F.3d at 184.  The Court of Appeals' remand therefore falls far short of the Thomas standard.

This conclusion comports with Buckhannon.  There, the Supreme Court refused to recognize a "catalyst" theory for obtaining prevailing-party status.  Buckhannon, 532 U.S. at 605.  Here, as in Buckhannon, plaintiffs' suit was at best a catalyst for defendants' voluntary decision to rescind the Lobbyist Ban.  Although the end of the Lobbyist Ban was plaintiffs' ultimate goal, there was no "judicially sanctioned changed in the legal relationship of the parties" which brought about this result.  Id.

Plaintiffs argue that this case is distinguishable from Buckhannon because plaintiffs won two "substantial legal victories" prior to the government's change in policy – namely, the district court's denial of the government's motion to dismiss for lack of standing and the Court of

Case 1:11-cv-01593-ABJ   Document 39   Filed 09/14/15   Page 12 of 16

Appeals' reversal of the district court's dismissal for failure to state a claim.  See Mot. at 8; Pl.

Reply at 6.  Plaintiffs claim that those victories distinguish this matter from Buckhannon because

it was those victories, rather than simply bringing a lawsuit, that caused the government to

rescind the Ban.  Mot. at 8.

      Yet the Supreme Court addressed precisely the same types of "victories" to which

plaintiffs cling here.  In rejecting the catalyst theory, the Supreme Court found that surviving a

motion to dismiss for lack of jurisdiction or for failure to state a claim "is not the type of legal

merit that [we] . . . have found necessary" for awarding fees.  Buckhannon, 532 U.S. at 605.

Plaintiffs' purported "victories" are precisely those identified in Buckhannon as insufficient to

confer prevailing-party status – namely, surviving a motion to dismiss for lack of jurisdiction and

a motion to dismiss for failure to state a claim.  This Court cannot gainsay such clear direction

from the Supreme Court.

      Notwithstanding Buckhannon, plaintiffs press their argument that a jurisdictional victory

is sufficient to confer prevailing-party status.  Mot. at 5–8; Pl. Reply at 2–3.  While this principle

may be true with respect to defendants who succeed in making jurisdictional challenges, see

D.C. v. Jeppsen ex rel. Jeppsen, 514 F.3d 1287, 1291 (D.C. Cir. 2008), the D.C. Circuit has not

applied this rule to plaintiffs.  Similarly, other Circuits, when they consider the issue, limit this

rule to defendants who achieve dismissal on jurisdictional grounds.  See, e.g., United States ex

rel. Grynberg v. Praxair, Inc., 389 F.3d 1038, 1055–58 (10th Cir. 2004); Citizens for a Better

Env't v. Steel Co., 230 F.3d 923, 927–28 (7th Cir. 2000).  The one-sidedness of this rule makes

sense:  when a defendant succeeds in a motion to dismiss for lack of jurisdiction, the case

terminates.  Thus, a jurisdictional victory dismissing the case is all the defendant needs to

prevail.  By contrast, when a plaintiff survives a jurisdictional challenge, he is merely entitled to

continue litigating his claim.  Accordingly, this Court is unwilling to find that plaintiffs are

prevailing parties simply because the district court found that they had standing.[4]

Plaintiffs also argue that the D.C. Circuit's remand, standing alone, constituted a victory

sufficient to confer prevailing-party status.  See Mot. at 6–8.  Plaintiffs cite to Kean, in which

this Court remanded a matter to an agency review board.  Kean for Congress Comm. v. FEC, No.

Civ.A. 04-0007 JDB, 2006 WL 89830, at *4 (D.D.C. 2006).  The Court observed there that "in

the administrative law context, the routine remedy is a remand to the agency.  The remand order

hence provided plaintiff with a substantial portion of the relief originally sought in this action."

Id. at *4; see also Lake Pilots Ass'n, Inc. v. U.S. Coast Guard, 310 F. Supp. 2d 333, 337–38

(D.D.C. 2004) (plaintiff prevailed because remand to agency was part of relief sought).    In

Kean, remand to the agency was a direct component of the relief sought.  Here, by contrast, the

D.C. Circuit's remand merely provided plaintiffs the opportunity to move forward with

litigation.  Nowhere in plaintiffs' complaint is there a request for remand to another adjudicative

body.  Thus, the analogy to administrative review cases is inapt.[5]

---

[4] Plaintiffs also cite a D.C. Circuit case where the court found that "[w]here a defendant 'w[as] given a fair chance to challenge . . . subject-matter jurisdiction,' the issuing court's determination of jurisdiction is res judicata and may not be challenged in a collateral proceeding in the district court but only on direct appeal." Bell Helicopter Textron, Inc. v. Islamic Republic of Iran, 734 F.3d 1175, 1182 (D.C. Cir. 2013).  Plaintiffs argue that res judicata turns their district-court standing victory into a favorable judgment for purposes of determining their status as prevailing parties.  Pl. Reply at 3.
    This Court disagrees.  First, Bell Helicopter has little bearing on the instant dispute.  It did not involve an award of attorneys' fees but rather a determination of whether a judgment was void under Rule 60(b)(4) of the Federal Rules of Civil Procedure.  Id.  Further, the issue of subject-matter jurisdiction in Bell Helicopter concerned a statutory framework for asserting jurisdiction over a foreign state.  Id.  It made no mention of standing whatsoever.  Moreover, even if the effects of res judicata were relevant here, the district court's determination regarding standing was not res judicata at all – the order was merely interlocutory and could be re-litigated on appeal to the D.C. Circuit.  See Hoffman v. Blaski, 363 U.S. 335, 340 (1960) (finding that an interlocutory ruling which is not on the merits has no res judicata effect).

[5] Moreover, plaintiffs' application of Kean stands in tension with the D.C. Circuit's holding in Waterman.  In Waterman, the Court of Appeals observed that a party generally has not prevailed when it obtains remand to an agency for further proceedings.  Waterman, 901 F.2d at 1122.  A party must also succeed at the administrative level on remand to qualify as "prevailing" under the EAJA.  Id.  But plaintiffs hold out Kean for the proposition that remand, standing alone and without subsequent victory in further proceedings below, is sufficient to confer prevailing-party status.  This is simply untrue, as Waterman makes clear.  Indeed, the only way remand alone can

Finally, plaintiffs argue that the D.C. Circuit's reversal of the district court's dismissal was "writing on the wall" for their ultimate victory, prompting the government to lift the Lobbyist Ban.  See Mot. at 7.  Here, plaintiffs cite Waterman, which held that a party prevails when a remand indicates that "a substantive victory will obviously follow."  Waterman, 901 F.2d at 1123.  Yet even here, the remand must consist of some material relief that changes the relationship of the parties.  See New Life Evangelistic Ctr., Inc. v. Sebelius, 847 F. Supp. 2d 50, 54 (D.D.C. 2012).  "'[A] favorable determination on a legal issue, even if it might have put the handwriting on the wall, is not enough by itself.'"  Klamath Siskiyou Wildlands Ctr. V. U.S. Bureau of Land Mgmt., 589 F.3d 1027, 1030 (9th Cir. 2009) (quoting Citizens for Better Forestry v. U.S. Forest Serv., 567 F.3d 1128, 1133–34 (9th Cir.2009)).  "[T]he court must formally indicate that the plaintiff is entitled to some actual relief – legal or equitable relief – in order to establish a material alteration.  A moral victory, in other words, is not enough." Id. (internal citations omitted).  Permitting plaintiffs to pursue their constitutional claims, as the D.C. Circuit did here, does not equate to a finding that their claims were meritorious.[6]  Cf.

---

constitute a victory for EAJA purposes when "the terms of the remand are such that a substantive victory will obviously follow." Id. at 1123.  To the extent Kean expresses a contrary view, this Court declines to follow it.

[6] Plaintiffs repeatedly contend that the Court of Appeals' language in Autor II was so dismissive of the government's position that plaintiffs' victory was sure to follow on remand. Mot. at 7; Pl. Reply at 4.  Yet the Court of Appeals in District of Columbia v. Strauss, 590 F.3d 898 (D.C. Cir. 2010), refused to recognize that "judicial relief" was afforded to the plaintiff despite similar obliquely stated opinions on the merits. Id. at 901.  There, the family of a special-needs student requested that his school district pay for an independent psychiatric evaluation of the student. Id. at 899.  The district refused, and the family filed an administrative complaint under the IDEA. Id. Prior to a hearing in front of the administrative hearing officer, the school district relented and agreed to pay for the evaluation. Id. at 900. The hearing officer therefore dismissed the family's complaint as moot. Id.  However, the hearing officer observed that "'[t]he facts of this case suggest that even if DCPS had not authorized an independent evaluation, Petitioner would have faced an uphill burden of proving' educational harm.'" Id. at 901 (quoting SHO Decision, at 3) (emphasis in original).  The hearing officer further stated that the student "'suffered no educational harm.'" Id. (quoting SHO Decision, at 3).  The school district then filed an action in federal district court seeking its attorneys' fees under 42 U.S.C. § 1988.

The Court of Appeals, applying Buckhannon and Thomas, refused to find that the hearing officer's dicta on the merits of the family's claim constituted "judicial relief" for the school district.  Those comments represented "not a decision on the merits, but instead the hearing officer's speculation about what might have happened had DCPS refused to provide the evaluation." Id.  The true ground for disposition of the family's claim was mootness. Id.  The D.C. Circuit found that the mootness finding "resolved nothing on the merits" as required by Thomas.  Id. at

Initiative & Referendum Inst., 2015 WL 4385288 at *4 (a finding that Postal Service's policy violated the First Amendment was sufficient to demonstrate that a substantive victory would obviously follow upon remand).  Nor did the remand provide the plaintiffs with any material relief that changed their relationship with the government.

---

902.  Here, the Court of Appeals did not make statements nearly as strong as those in Strauss.  Instead, the Court of Appeals merely quoted the plaintiffs' brief, which stated that the government's arguments were "'barely intelligible.'"  Autor II, 740 F.3d at 184 (quoting Appellants' Reply Brief at 13).  Thus, the language to which plaintiffs cling here is their own.  That language did not come from the D.C. Circuit itself.  Moreover, even if one viewed the intelligibility comment as expressing the opinion of the D.C. Circuit, under Strauss, that dictum cannot substitute for actual relief, something the Court of Appeals expressly declined to grant.  See id. ("Appellants also urge us to undertake the Pickering balancing ourselves.  But given that the issue is virtually unbriefed, that the district court dismissed the complaint pursuant to Rule 12(b)(6), and that the challenged ban represents a major presidential initiative, we believe the wisest course of action is to remand for the district court to develop a factual record and undertake the Pickering analysis in the first instance.").

## IV.    CONCLUSION

Plaintiffs are not prevailing parties in this case.  Their two victories – the district court's ruling on standing and the Court of Appeals' reversal of the government's motion to dismiss – do not meet the standard applied in the D.C. Circuit to determine prevailing-party status.  Instead, as explained by the Supreme Court in Buckhannon, plaintiffs and their lawsuit were a mere catalyst for the government's voluntary decision to rescind the Lobbyist Ban.  Their interlocutory successes are "'not the stuff of which legal victories are made.'"  Buckhannon, 532 U.S. at 605 (quoting Hewitt, 482 U.S. at 760).  Accordingly, plaintiffs are not eligible for an award of attorneys' fees and costs under the EAJA.[7]

In light of the foregoing, plaintiffs' Motion for Attorney Fees will be **DENIED**.  An appropriate Order accompanies this Memorandum Opinion.


Date:  September 14, 2015                              _____
                                                      G. MICHAEL HARVEY
                                                      UNITED STATES MAGISTRATE JUDGE

---

[7] Because the Court concludes that plaintiffs have not prevailed in this action, it need not address whether the government's position was substantially justified.  See New Life Evangelistic Ctr. v. Sebelius, Civil Action No. 09–1294 CKK/DAR, 2011 WL 1237935, at *4 (D.D.C. Apr. 1, 2011).